CASE 7—INDICTMENT—FEBRUARY 10.

# Rutherford vs. Commonwealth.

APPEAL FROM MUHLENBURG CIRCUIT COURT.

1. This instruction, given to the jury upon a criminal trial, held not erroneous: "That it is the province of the jury to decide upon the credibility of each witness introduced in the cause, and if a witness swear *falsely* in relation to one particular fact in the case, they have the right to disregard every other fact proven by said witness."

2. Confessions that have been obtained from a prisoner by the application of the influence of hope or fear to his mind, are excluded as testimony, because very probably they may not be true. The confession, to be admissible, must be made voluntarily, without the application of hope or fear.

3. Where there is no motive to induce the prisoner to make a statement which was not true, (which is the main point to be considered in such cases,) the confession is admissible as evidence against him, although obtained by a deception practiced upon him, or false representation made to him for that purpose, or he be induced to make it by a solemn promise of secrecy, or by the promise of some collateral benefit or advantage.

4. After one accused of murder had been apprehended and was in custody, he remarked to the officer having him in charge "that he had no fear, and asked him what he thought." The officer replied "that if one or two important facts could be shown he would get clear." The prisoner inquired what they were, and the officer then told him to show where he was the night before, and also to show that he had "*no money transactions*" with the murdered man, and that if he could show the latter he would get clear. The prisoner then stated that he had not had any money transaction with him. Under the facts and circumstances proved upon the trial, (detailed in the opinion,) it was important for the accused to show the opposite, in order to remove the presumption of guilt arising from his having in his possession, after the murder, money which had been in possession of the murdered man on the day previous to the night the murder was committed. *Held*—That the statement thus made by the prisoner is inadmissible as evidence against him.

5. A witness is not bound to answer an interrogatory which would subject him to a criminal or penal prosecution.

6. The object of a cross-examination is to test the credibility of the witness and the truth of his statements. The motives by which he is actuated, his prejudices, and his inclination, may be inquired into. So where an affirmative answer to a question propounded to him would, by tending to disgrace him, have diminished his credibility, he should answer.

EDWARDS & BOWDEN and EWING, for appellant, cited *Jane vs. Commonwealth, ante; Rev. Stat.*, 253; *Starkie Ev., part 3, secs.* 87, 75, 74, 77; *Ib., part* 2, *secs.* 25, 26; *Swift's Evidence, pages* 135, 137; *Wharton's Am. Crim. Law, page* 310; 1 *Chitty's Crim. Law,* 621, 622; 2 *Starkie Ev., page* 48, &c., *part* 4; 2 *Russell on Crimes, page* 645, &c.

F. G. HARVEY, on same side, cited *Criminal Code, secs.* 226, 237; 2 *Russell on Crimes, 7th Amer. from 3d London ed., pages* 732, 930; *Greenleaf Ev., 3d ed., sections* 455, 456.

T. A. MARSHALL on same side.

A. J. JAMES, Attorney General, for Commonwealth, cited *Criminal Code, sec.* 334; *Civil Code, sec.* 661; *Wharton's Amer. Crim. Law, sec.* 712.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT:

The appellant was indicted for the murder of A. M. Starks, found guilty, and has appealed to this court from that judgment.

The following instruction which the court gave to the jury, and which, at the time it was given, was excepted to by the counsel for the accused, is now objected to as being erroneous, viz:

"That it is the province of the jury to decide upon the credibility of each witness introduced in the cause; and if a witness swear *falsely* in relation to one particular fact in the case, they have the right to disregard every other fact proven by said witness."

The objection which is urged against this instruction is, that it makes the credibility of the witness depend upon the truth of his testimony concerning a particular fact in the case, without any reference to the materiality of that fact, or to the knowledge of the witness that his testimony was not true.

The word false, according to its proper signification, means that which is not true; and in this sense a witness might swear

falsely, although he believed that he was swearing to the truth. But in common acceptation the word has a different signification, and is understood to mean that the statement deemed false is not only untrue, but known to be so by the person making it. In order, however, to render the meaning of the word certain and definite, it is usually preceded by a word importing knowledge—as, for example, he knowingly swore to that which is false.

As, however, the instruction which was objected to submitted to the jury the whole question relating to the credibility of the witness, and as there is no reason for supposing that they would have regarded his credibility in any degree affected, unless they believed he had knowingly sworn to that which was untrue, even if they could have entertained any doubt of what the court meant by the use of the word falsely, we cannot say that the instruction, as given, operated to the prejudice of the appellant.

According to the instruction, the false swearing, in order to affect the credibility of the witness, must have been in relation to some particular fact in the case; and as no facts but such as were material could be properly proved in the case, the instruction is not objectionable on this ground.

The action of the court in giving and refusing instructions was substantially correct. But the principal question to be considered relates to the decisions of the court below in admitting and rejecting important testimony.

The murder with which the appellant is accused is supposed to have been committed in the night. An effort was made upon the trial to prove that the appellant and the man who was murdered were seen riding together, on a road leading out of the town of Elkton, after night. The body of the murdered man was found in the same road early the next morning. The parties had been together during the day in the town of Elkton, and Starks, the man who was murdered, had exhibited, in the presence of the appellant, some money which he had in his possession.

It was also proved by a witness by the name of Ware, who was a deputy sheriff, that Starks had paid to him on the same

day a five-dollar bank bill, on the back of which the witness had written his name, and which bill he had afterwards, during the same day, paid back to Starks, before the latter left the town of Elkton.

There was other evidence which conduced to prove that the same bank bill was in the possession of the accused on the next morning, and had been paid by him to an individual in the settlement of a demand growing out of a horse trade between the parties.

After the accused had been apprehended, and was in the custody of said Ware, as deputy sheriff, by whom he had been arrested, he remarked to the officer " that he had no fear, and asked him what he thought." Ware replied, " that if one or two important facts could be shown, he would get clear." The prisoner inquired what they were ; and the officer then told him to " show where he was the night before, and also to show that he had no money transactions with Starks ; and that if he could show that he had no money transaction with Starks, he would get clear." The prisoner then stated that he had not had any money transaction with Starks. This statement, made by the prisoner under the foregoing circumstances, was admitted as evidence against him upon the trial, notwithstanding it was objected to by his counsel.

It is perfectly obvious that it was important for the accused, in order to remove the presumption of guilt which was created by his having in his possession, after the murder, the same money which was in the possession of the man who was murdered on the day previous to the night the murder was committed, to show that he had received the money from him before he left the town of Elkton, instead of showing that he did not have any moneyed transaction with him. The evident design, therefore, in inducing him to state that he did not have any moneyed transaction with Starks, was to fasten upon him the commission of the murder, as well as the robbery of the murdered man.

The statement made by the prisoner was not intended by him to be a confession of his guilt, although such was its legal effect when considered in connection with the other facts which

had been developed at the time the statement was made by him. He made it under a conviction, which was superinduced by the representations of the officer who had him in custody, that it would tend to exculpate him, and to establish his innocence, although it contained the confession of a fact which tended strongly to establish his guilt.

Confessions that have been obtained from a prisoner by the application of the influence of hope or fear to his mind, are excluded as testimony, because, very probably, they may not be true. The rule of law applicable in such cases demands that the confession, to be admissible as evidence, shall have been made voluntarily, without the appliances of hope or fear. Wherever it has been drawn from the prisoner by the application of those motives, it cannot be received in evidence in a criminal case.

Now it is very evident that the statement in question was made under the influence of hope. The prisoner was induced to believe, if he would assume the attitude indicated by that statement, that he would get clear of the charge that was made against him. This inducement was presented by the officer who had him in custody, and in whose knowledge he seemed to confide. The statement was made by the prisoner under the belief that it was necessary for his safety, and, consequently, there is no certainty of its truth; and this is the very ground upon which statements and confessions extracted by the influence of hope upon the mind are rejected as unworthy of credit.

Greenleaf, in his Treatise on Evidence, (*sec.* 220,) says: " The rule under consideration has been illustrated in a variety of cases. Thus, where the prosecutor said to the prisoner, ' unless you will give me a more satisfactory account, I will take you before a magistrate,' evidence of the confession thereupon made was rejected. It was also rejected where the language used by the prosecutor was, ' if you will tell me where the goods are, I will be favorable to you;' where the constable who arrested the prisoner said, ' it is of no use for you to deny it, for there are the man and boy who will swear they saw you do it.' "

There are cases in which it has been held that, although the confession, to be admissible, should be voluntary, yet that it is not necessary that it should be the *spontaneous* act of the pris-

oner. Thus, if he be induced to make it by a solemn promise of secrecy, or by the promise of some collateral benefit or advantage, no hope or favor being held out in respect to the criminal charge against him, it will be admissible as evidence. (*Commonwealth vs. Knapp*, 9 *Pick.*, 496; *Rex vs. Green*, 6 *C. & P.*, 655.) And it has been decided that a confession is admissible even where it has been obtained by a *deception* practised on the prisoner, or false representation made to him for that purpose, provided there is no reason to suppose that the inducement held out was calculated to produce any untrue statement. Thus, in a case where a prisoner had made a confession, after a representation made to him by a constable in the gaol that his accomplices had been taken into custody, which was not the fact, the confession so made was received as evidence against him. (*Rex vs. Burley*, 2 *Starkie on Evidence, side page* 22, *note m*.) In these cases, however, there was no motive to induce the prisoner to make a statement which was not true, which, in all such cases, is the main point to be considered.

But in this case the inducement held out to the prisoner was calculated to produce an untrue statement, inasmuch as he was made to believe that such a statement was not only necessary, but would have the effect to free him from the accusation against him. Thus a powerful inducement was presented to his mind to make such a statement, without any regard to its truth or falsehood. We are, therefore, of the opinion that the court erred in permitting it to be used as evidence against the prisoner upon the trial.

The following interrogatories were propounded on cross-examination, by the counsel of the prisoner, to the same deputy sheriff who deposed to the statement which we have decided ought to have been rejected as evidence, viz:

1. Did you or not propose to S. O. Rutherford, that if he would pay you fifty dollars, you would leave the State, and not appear against his son as a witness?

2. Did you or not receive from said S. O. Rutherford a bribe, at your own request and instance, not to appear against his son?

3. Did you or not go to his (S. O. Rutherford's) house, and there, in a conversation with him, propose to him, if he would

pay you fifty dollars, you would leave the State, and not appear as a witness against his son?

4. Did you or not send a letter to said S. O. Rutherford, post-marked Elkton, Ky., with a large cross-mark in said letter, and nothing else written in it, which was agreed by you with him, Rutherford, in the presence of John S. Sears, should be the sign that you were ready to leave and wanted the money? and did he, Rutherford, or not send you the money in a letter, and did you or not receive it?

5. Did you or not say to S. O. Rutherford, in the presence of the defendant, when you had him in custody in Elkton, and before you were introduced as a witness at the examining trial, that you would stand in the defendant's shoes for fifty cents?

Which interrogatories were objected to by the attorney for the Commonwealth, and the court sustained the objection, and refused to permit them to be answered by the witness; to which decision of the court the attorney for the prisoner excepted.

As an answer of any of said interrogatories in the affirmative, except the first and fifth, might have subjected the witness to a criminal or penal prosecution, he was not bound to answer them. Inasmuch, therefore, as he could not be compelled to answer, and it was not suggested that he was willing to answer the interrogatories, we cannot decide that the court excluded important evidence, or that the action of the court in refusing to permit the interrogatories to be answered was prejudicial to the appellant.

The witness, however, might have been compelled to answer the first and fifth interrogatories. An answer of those questions in the affirmative would, by tending to disgrace him, have diminished his credibility. The object of a cross-examination is to test the credibility of the witness and the truth of his statements. The motives by which he is actuated, his prejudices, and his inclination, may be inquired into. We are of the opinion, therefore, that the court should have allowed these two questions to have been answered by the witness. Whether the refusal of the court to permit them to be answered, when the record contains no statement that the propounder believed they would be answered in the affirmative, or, if an-

swered in the negative, that he was prepared with other evidence to contradict the witness, would of itself authorize a reversal of the judgment, we do not deem it necessary to decide, inasmuch as it has to be reversed on another ground.

Wherefore, the judgment is reversed, and cause remanded for a new trial and further proceedings not inconsistent with this opinion.