[Sac. No. 785.   Department Two. — July 16, 1901.]

## SANFORD BENNETT, Respondent, v. J. B. WILSON et al., Appellants.

JUDGMENT — FRAUDULENT COLLUSION — FALSE RETURN OF SUMMONS —
APPEAL — LAW OF CASE — DIFFERENT FACTS UPON SECOND APPEAL.
— The decision, upon a former appeal, that a complaint, averring
fraudulent collusion in obtaining a judgment between the plaintiff,
who sought it, and the sheriff, whereby the latter made a false re-
turn of service of summons upon the defendant corporation, showed
that the judgment was fraudulent and void, and subject to collateral
attack by strangers whose rights were thereby affected, is not the
law of the case upon a second appeal, upon which there is a finding
against the existence of the alleged fraudulent collusion, and upon
which the plaintiff appears to have no right to impeach the judg-
ment.

ID. — JURISDICTION OF PERSON OF DEFENDANT — PRESUMPTION AS TO
COURTS OF RECORD. — As a general rule, with a few exceptions,
jurisdiction of the person of the defendant in a court of record is to
be conclusively presumed, if the contrary does not appear from the
record.

ID. — RETURN OF SERVICE OF SUMMONS — ABSENCE OF COLLUSION —
JURISDICTION — ADJUDICATION OF SERVICE. — Where no fraudulent
collusion appears, the return of the service of summons upon the
defendant by the proper officer gives the court jurisdiction of his
person, and to inquire and determine whether in fact the summons
has been served upon the defendant, and its judgment against the
defendant is an adjudication of such service, which, in general, can
only be avoided in a direct proceeding. .

ID. — AVOIDANCE OF JUDGMENT BY STRANGERS — COLLATERAL ATTACK
UPON JURISDICTION OF PERSON — DATE OF INTEREST. — Strangers
cannot avoid a judgment not rendered void by fraudulent collu-
sion, for want of jurisdiction of the person of the defendant, unless
rights existing in their favor at the date of the judgment are injuri-
ously affected thereby, nor unless the want of such jurisdiction ap-
pears upon the face of the record.

ID. — COLLATERAL ATTACK BY REDEMPTIONER UPON JUDGMENT OF PRIOR
REDEMPTIONER — IRREGULAR SERVICE OF SUMMONS. — A redemptioner
of property sold under execution, whose judgment was rendered
subsequently to that of a prior redemptioner, cannot collaterally
attack the judgment of the prior redemptioner on the mere ground
that the sheriff's return of the service of summons upon the corpo-
ration defendant stated that the person served was managing agent
of the corporation, when he was not such in fact, in the absence of
any proof of fraudulent collusion.

ID.— FRAUD UPON CORPORATION NOT IMPEACHABLE BY PERSON NOT IN-
JURED. — Even if there had been any fraud against the corporation
defendant in rendering the prior judgment against it by default,
the subsequent redemptioner, not having been injured by the judg-
ment, is not entitled to impeach it collaterally.

APPEAL from a judgment of the Superior Court of Plumas
County.   Stanley A. Smith, Judge presiding.

The facts are stated in the opinion.

L. N. Peter, and W. W. Kellogg, for Appellants.

Goodwin & Webb, for Respondent.

SMITH, C.—The case was before this court on a former ap-
peal, on a judgment for defendants, rendered on demurrer to
the complaint, which was reversed.   The decision is reported
in *Bennett* v. *Wilson*, 122 Cal. 509,[1] where the case is thus stated:
"The facts alleged which are necessary to illustrate the main
question discussed by counsel may be briefly stated.   Defend-
ant company is a foreign corporation, and owned and operated
mining property in Plumas County; defendant Bransford is
sheriff of said county; defendant Wilson is a stockholder in
and the managing agent and in actual control and manage-
ment of the property of defendant corporation; in 1895, one
Swearingen obtained a judgment lien against the property of
defendant corporation, which was sold on execution, and one
Cole became the purchaser at sheriff's sale, July 18, 1896; the
defendant corporation did not redeem; plaintiff obtained a
judgment lien before the time of redemption expired, and with
it redeemed from the purchaser, and, sixty days thereafter,
demanded a deed from the sheriff, which was refused, for the
alleged reason that defendant Wilson was a lawful redemp-.
tioner, and had within the sixty days required by law made
redemption; Wilson's judgment lien was junior to plaintiff's.
*It is alleged that Wilson's judgment was obtained by fraudulent
collusion between him and said sheriff, whereby the sheriff made
a false return of service of summons on defendant corporation;*
that no service was in fact made, and said corporation had no
knowledge or notice of the action commenced by Wilson, and
did not appear or answer, and judgment was obtained by de-
fault, and said judgment is fraudulent and void; plaintiff re-

[1] 68 Am. St. Rep. 61.

fused to accept the money tendered, and demanded a deed from the sheriff, which was refused."

After the case was remanded, the plaintiff recovered judgment. The defendants Wilson and Bransford appeal therefrom, on the judgment roll and bill of exceptions. The other defendant named in the complaint, the California Gold Mining and Investment Company, was not served with summons, and did not appear.

The following is an abstract of the judgments and proceedings out of which the controversy grows: —

"Swearingen v. Cal. Gold. Min. & Inv. Co.   Judgment for $483.38, rendered June 17, 1895.   Execution sale to L. M. Cole, Jan. 15, 1897.

"Bennett v. Same Dfdt.   Judgment for $642.96, rendered July 13, 1896.   Redemption from sale to Cole, Jan. 15, 1897.

"Wilson v. Same Dfdt.   Judgment July 17, 1896.   Redemption from Bennett, March, 1897.   The summons was served in this case on June 11, 1896, prior to the date of Bennett's judgment."

There is no allegation that the judgment was taken by Wilson with intent to defraud the plaintiff or to interfere with his rights, or with intent to defraud creditors, or that there was any fraud or fraudulent intent, other than such as may be implied in the other facts as above stated.

On the trial the court found all the allegations of the complaint to be true, except the alleged fraudulent collusion between Wilson and the sheriff, on which point it found that the sheriff made the service on Fant, "then believing the said Fant to be the managing or business agent of said corporation."

On this state of the record, the appellants claim that "the findings being positively against the alleged fraud and collusion, this element is entirely eliminated from the case, and it follows that judgment should have gone for the defendant." On the other hand, the respondent claims that the question as to fraud and collusion is immaterial; that the "fraudulent acts charged are presented as the inducement leading to an imposition on the court, — an imposition which procured a judgment against the corporation, which the court had no power to enter, for want of jurisdiction over the person" of the defendant.   Hence it is claimed the judgment was void, on "principles not only elementary, but [that] have become the law of this case."

With regard to the former decision, we do not think it susceptible of the construction claimed by the respondent. In the statement of the case by the court, the alleged fraudulent collusion between Wilson and the sheriff is given (in the passage italicized) a very prominent place, and in the course of the opinion it is repeatedly referred to in such a manner as to indicate that it was the ground of the decision. Thus in the opinion, the proposition that "said judgment is fraudulent and void" is stated, apparently, as the conclusion from the facts of the alleged collusion and non-service, thus making it evident that the court understood the position of the plaintiff (then appellant) to be that the judgment was void because thus procured. And accordingly, on page 515 of 122 California, the decision is based on the proposition that (on the facts alleged) the judgment was void, as "obtained by fraud," and on page 516 the case is referred to as identical in principle with the case of a "judgment . . . collusive between the debtor and creditor." The decision must therefore be regarded as resting on the principle that a judgment obtained by fraudulent collusion between the plaintiff and the defendant, or between the plaintiff and the officers of the law, may be collaterally attacked by persons not parties whose rights are affected. Hence the conclusion of the court that the plaintiff's right of action comes within the principles discussed by Mr. Freeman in his work on Judgments (secs. 334–337, and the authorities there given), thus making the sections cited a part of the opinion. Turning to these, we find the question proposed for discussion is to determine "when judgments not void for want of jurisdiction [i. e., not void on the face of the record (see secs. 116 ad fin.)], nor attacked by any equitable suit or defense, may nevertheless be wholly or partly avoided" by strangers to the record (sec. 334). Three cases are given in which this may be permitted, namely: 1. The case of parties "*prejudiced* [by the judgment] *in regard to some pre-existing right,*" as in the examples given in section 335; 2. The case of judgments "procured through fraud of either of the parties, or by the collusion of both *for the purpose of defrauding some third person*" (sec. 336); and 3. That of judgments impeachable for error, "such as left the court without jurisdiction, and the judgment absolutely void as between the parties thereto" (sec. 337).

It is not to be supposed from the general citation of these

sections that the court intended to affirm that the case at bar
came within all of the cases enumerated. The several sections
are cited because the general question is discussed in them,
and it is left to the reader (by aid of the maxim, *Reddendo
singula singulis*) to determine, from what is said in the opin-
ion, the particular class treated of to which the case at bar is
to be assigned. Of the classes enumerated, the first, it is
obvious, must be rejected. Bennett's redemption from Cole
was about six months after Wilson's judgment. At the time
of the judgment he was merely a judgment creditor, his judg-
ment antedating that of Wilson by four days. He was there-
fore in no way injured by the Wilson judgment, his own judg-
ment being a prior lien. His right to attack the judgment
must therefore rest upon his interest subsequently acquired as
redemptioner from Cole, who himself purchased about six
months after the judgment. The case, therefore, cannot be
regarded as falling within this class, which includes only those
whose rights existing at the date of the judgment are pre-
judiced thereby. Nor can the case be assigned to the second
class. There is no allegation that the judgment was obtained
"for the purpose of defrauding" Bennett, or any one else; and
as to Bennett, the facts of the case exclude the possibility of
any such intent. When the judgment was rendered, Wilson
was merely a judgment creditor, and when the summons was
served (June 11th) he was not even that. Nor is there any
allegation that the judgment was obtained by collusion be-
tween the parties for the purpose of defrauding creditors. On
the contrary, it is expressly alleged that it was rendered with-
out the knowledge of the defendant corporation. There re-
mains, therefore, only the third class,— namely, that of judg-
ments apparently valid, but in fact without jurisdiction, and
"absolutely void as between the parties thereto." And from
the opinion itself it is clear that this was the class of cases
referred to; for the judgment is therein uniformly described
as void, and the decision is expressly based on the principle
cited by the court, that "a void judgment is, in effect, no judg-
ment." "By it," it is continued, "no rights are divested;
from it no rights can be obtained. Being worthless itself, all
proceedings founded upon it are equally worthless. It neither
bars nor binds any one." (Freeman on Judgments, sec. 117.)
In what is said by the author in this section, and in the au-

thorities cited, we must therefore find the principles by which the former decision is to be explained and understood.

The rule laid down by Mr. Freeman in the section cited (337) is thus expressed: "The parties to an action or proceeding, and all persons who, though not parties thereto, are not prejudiced by the judgment when ren lered, will not be permitted to assail or avoid it in any collateral proceeding for error or irregularity, unless it was such as left the court without jurisdiction, and the judgment absolutely void as between the parties thereto." Such judgments, it seems, may be attacked by strangers to the record, whose rights, whether existing at the time of the judgment or afterwards acquired, are affected, — i. e., by persons who, not being parties to the record, or privies, have no remedy against the judgment, by appeal or otherwise, in the case itself. But, in general, they cannot be impeached otherwise than by the record itself, or where the lack of jurisdiction appears on the face of the record. (*Hodgdon* v. *Southern Pacific R. R. Co.*, 75 Cal. 648; *Hill* v. *City etc. Co.*, 79 Cal. 188.) Of this kind are all the cases cited by the author, and also the case of *Downs* v. *Fuller*, 2 Met. 135,[1] and other cases cited in the opinion in connection therewith. There are, however, some exceptions to this rule. *Ex vi termini*, living parties are essential to jurisdiction. Hence, when, at the time the judgment was rendered, the defendant was dead, — as in the case of *Warter* v. *Perry*, Cro. Eliz. 199, and in *Randall's Case*, 2 Mod. 308, cited in the opinion, and in *Griswold* v. *Stewart*, 4 Cow. 457, — the jurisdiction is only apparent, and the fact may be shown by parties whose interests are injuriously affected. And so if a judgment be entered on a forged sheriff's return, or by the clerk without authority; for such judgments are not in fact judgments of the court. And on the same principle, *collusive* judgments may, in certain cases, be attacked by strangers. Hence judgments of this kind are included in this class by the author, in the section cited, being the same referred to in section 250, where they are more fully explained. To this class only, it is clear, can the opinion be understood as referring. Such cases are generally cases of collusion between the parties to the suit (*Pierce* v. *Jackson*, 6 Mass. 242; *Fermor's Appeal*, 3 Coke, 77; *Meckley's Appeal*, 102 Pa. St. 541; *Biddle* v. *Tomlinson*, 115 Pa. St. 299; *Sponsler's*

[1] 35 Am. Dec. 393.

*Appeal,* 127 Pa. St. 410; Freeman on Judgments, sec. 335); but, though not including in their literal expression the case at bar, they are expressly referred to in the opinion (122 Cal. 514) as identical with it in principle. The decision must therefore be regarded as determining only that the judgment of Wilson against the corporation was (on the allegations of the complaint) void because obtained by him by fraudulent collusion with the sheriff, and hence that it was not a real or "*bona fide* existing judgment," or " actual adjudication upon the matter in controversy." (*Spencer* v. *Vigneaux,* 20 Cal. 449.) And as it is now found there was no such collusion, but that the service and return were made by the sheriff in good faith, the decision cannot be regarded as the law of the case as now presented.

The case must therefore be considered on general principles, and in thus considering it, it will be convenient to consider separately the general question as to the effect of a judgment regular on the face of the record, where there has been in fact no service of summons, and the question as to how the case may be affected by the peculiar circumstances presented by it.

1. As to the general question, the law is well settled. No doubt the court must have jurisdiction of the person of the defendant; but—with exceptions that have been considered—such jurisdiction, in the case of courts of record, is conclusively presumed, unless the contrary appears from the record itself. And where, as in this case, it appears from the return of the proper officer that the defendant has been served, the court in fact has jurisdiction over him. (*Reinhart* v. *Lugo,* 86 Cal. 399;[1] *Lyons* v. *Cunningham,* 66 Cal. 43.) For jurisdiction is but power to hear and determine the questions arising in the case, and among these is the question whether the summons has in fact been served. Its judgment, therefore, unless on a direct proceeding to set it aside, or in the exceptional cases already considered, must be taken as a conclusive determination of this question.

On this point the language used in *Downs* v. *Fuller,* 2 Met. 393[2] (cited in the former decision), and similar cases, is liable to be misunderstood. (Freeman on Judgments, sec. 337, p. 612; Van Fleet on Collateral Attack, sec. 12, pp. 11, 12.) It is there said: "Although the judgment in favor of the plaintiff was

[1] 21 Am. St. Rep. 52.          [2] 35 Am. Dec. 393.
CXXXIII. Cal.—25

not recovered by collusion with his debtor, or with any fraudulent intent, yet we think the defendant has a right to avoid it in the same manner, because he is neither party nor privy to the plaintiff's judgment, and is not entitled by the rules of law to reverse it by writ of error." But this does not mean that a judgment may be attacked by all strangers to the record; it applies only to cases "where a party has a right to impeach a judgment,"—as in the case considered; where the rights of the party existing at the date of the judgment were affected; and where the defeat of jurisdiction appeared from the record itself.

2. In this case, there is no charge of collusion between the parties to the suit; and it is found that there was no collusion between Wilson and the sheriff; and it affirmatively appears that the judgment did not affect, and indeed could not have affected, the rights of the plaintiff existing at the time of its rendition. The findings, therefore, that the service of the summons was a wrong, "against the rights of the plaintiff," and that the "judgment was a fraud upon the rights of the plaintiff as a redemptioner of said property," are in conflict with the specific facts found, and must be disregarded; for it appears from the admitted allegations of the complaint that at the time of the service of summons Bennett was not even a judgment creditor, and therefore could not be defrauded by the service of summons, and, also, that he did not become a redemptioner until six months (lacking two days) after Wilson's judgment, which, therefore, could not be a fraud upon rights not then existing. The material facts found, therefore, are, merely, that Wilson was, and Fant was not, the managing agent of the company; that, with the knowledge of Wilson, and by direction of his attorney, the summons was served on the latter by the sheriff, believing him to be the managing agent of the corporation; and that the judgment was demanded, and entered on sheriff's return.' These facts are not sufficient to bring the plaintiff within any class recognized by the authorities as entitled to impeach a judgment regular on its face. It is ingeniously put by the respondent's counsel that the entry of the judgment was "an imposition on the court." But this was not the case. The judgment was entered by default by the clerk, whose legal duty it was to enter it, and who had no discretion in the matter. Nor, had there been such imposition, would it have been any concern of the

plaintiff.   The relations of Wilson to the corporation, in the absence of explanation, might give rise to a presumption of fraud against it.   But fraud against the corporation, even had it been found, would not entitle the plaintiff to impeach the judgment.   (*Meckley's Appeal* 102 Pa. St. 536; *Sponsler's Appeal*, 127 Pa. St. 410; *Biddle* v. *Tomlinson*, 115 Pa. St. 299.)

Under the view we have taken of the case, it will be unnecessary to examine into the sufficiency of the evidence to support the findings.

I advise that the judgment be reversed and the cause remanded, with directions to the court below to enter judgment for the defendants on the findings.

Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed and the cause remanded, with directions to the court below to enter judgment for the defendants on the findings.                    Temple, J., Henshaw, J., McFarland, J.

Hearing in Bank denied.