[Civ. No. 1141.  Fourth Appellate District.—September 25, 1934.]

In the Matter of the Estate of LOUIS V. OLCESE, Deceased.  OLCESE KRAMER, Appellant, v. JENNIE CAUZZA et al., as Administrators, etc., Respondents.

Edwin H. Williams and Rowen Irwin for Appellant.

W. H. Metson, Preston & Braucht and Borton & Petrini for Respondents.

Harvey & Johnson and Alfred H. McAdoo, as *Amici Curiae* on Behalf of Respondents.

JENNINGS, J.—The appeal herein is taken by Olcese Kramer, an heir at law of Louis V. Olcese, deceased, from an order of the superior court allowing and approving a special account rendered by the administrators of the estate of said decedent.. The account contained a statement of receipts and disbursements during the period which intervened between May 22, 1932, and December 5, 1932. Upon the rendition of the account appellant filed objections thereto

in which he attacked three items of disbursement. His objections were overruled and disallowed and from the order approving the account in full this appeal has been prosecuted.

The first item to which objection was made is one which shows payment by the administrators of the sum of $12 for costs incurred by them in intervening in an action instituted by a corporation known as the Texas Company against the Bank of America National Trust and Savings Association. The complaint in this action sought recovery from the Bank of America of the sum of $4,800 which was alleged to have been received by the bank for the use and benefit of the Texas Company. The record indicates that the following facts were developed with respect to this litigation: During the year 1930 the above-mentioned bank was acting as administrator of the estate of Louis V. Olcese, deceased. In such capacity it executed a lease of certain real property of the estate to the Texas Company and as consideration therefor received the sum of $4,800. During the month of September, 1930, the order by which the bank had been appointed general administrator of the estate was reversed on appeal therefrom and in the month of October, 1930, the order appointing the bank special administrator was annulled by the Supreme Court of California. Thereafter negotiations were entered into between the various parties interested in the estate which finally resulted in the execution of a ratification agreement by such parties and by the bank. This agreement provided in brief that all parties interested in the estate ratified, confirmed and approved the entire administration of the estate which had been conducted by the bank and agreed, with certain specified exceptions, that its final account as administrator theretofore filed should be settled, allowed, and approved. In this account the bank charged itself with the receipt of the sum of $4,800 from the Texas Company. The bank's account as administrator was allowed and approved on January 13, 1932. New administrators of the estate were subsequently appointed by the court and to these new administrators the bank paid over the balance of the money which was shown to be due the estate by the bank's final account. In the meantime, the Texas Company had become concerned with respect to the status of its lease which had been executed

by the bank whose order of appointment as administrator of the estate had been reversed. On January 26, 1931, the Texas Company demanded .in writing that a valid lease of the property should be issued to it within three weeks thereafter or that the Texas Company be reimbursed in the full amount of its expenditures in connection with the lease. No new lease was executed and no reimbursement was made. Thereupon on April 20, 1931, an action was instituted by the Texas Company in the Superior Court of the City and County of San Francisco, wherein the plaintiff sought to recover the sum of $4,800 which it had paid as consideration for the execution of the lease. This action was brought against the bank in its individual capacity. The complaint contained no allegation that the bank had received the money in its representative capacity as administrator of the estate of Olcese. No mention was made of the estate and no effort was made by this action to impose any liability upon the estate. Nevertheless, the administrators who succeeded the bank elected to intervene in the action and as administrators they filed a complaint in intervention. In so doing they paid out the sum of $12 as fees and in their account they included this item as a proper item of expense incurred by them in the process of administration.

Appellant contends that since the action brought by the Texas Company was instituted against the bank in its individual capacity and no effort was made to impose a liability upon the estate, the administrators of the estate were not justified in intervening in the suit and that their action in this regard, taken without leave of the court by whom they were appointed, was purely voluntary and officious. On the other hand, respondents point to the fact that, by the ratification agreement, all parties interested in the estate, including appellant, had expressly ratified all acts of the bank as administrator, that one of such acts was the lease executed to the Texas Company, and that, in its final account which was specifically approved by the ratification agreement and which was subsequently allowed and settled by the court, the bank charged itself with the receipt of the sum of $4,800 from the Texas Company, and that this sum was included in the funds of the estate which were paid over by the bank to the administrators of the

estate. From this it is argued particularly in the brief filed by attorneys for the bank as *amici curiae,* that the action of the administrators in intervening in the litigation brought by the Texas Company against the bank was not officious, but was entirely justified since, if the Texas Company should succeed in its suit, the administrators of the estate could be certain that a claim would be made against the estate by the bank for reimbursement, whereas if the Texas Company should fail in its action the estate would be absolved of any liability to the bank.

Unhappily, there is not included in the record a copy of the pleading filed by the administrators in the action filed by the Texas Company. We may assume that it took the form of a complaint in intervention. We are not, however, apprised of the position taken by the administrators in this pleading. It does appear that the intervention took place without approval of the court by whom the administrators were appointed and without the consent of appellant.

The situation with respect to the intervention is rendered more complicated because of the presence in the ratification agreement of a certain provision the correct interpretation of which is a subject of sharp dispute between counsel and by reason of the fact that there is now pending in the Superior Court of Kern County an action instituted by the bank against all parties to the ratification agreement wherein the bank seeks revision of the ratification agreement and for a declaration that, in the event a judgment is obtained by the Texas Company against the bank which becomes final, the amount of such judgment shall be paid out of the estate. The record fails to disclose whether or not the Texas Company action has proceeded to trial.

The provision in the ratification agreement whose interpretation forms the subject of dispute is in the following language:

"Whereas, during the administration of said estate conducted by said Bank, certain oil leases or sales of mineral rights were made upon lands in said estate, and certain moneys paid in consideration of the execution of the same, and referred to as bonuses; and whereas suits are now pending for the recovery by the Lessees of the moneys so paid as bonuses, and other litigation for the recovery of such bonuses is threatened; it is agreed that in the event of the

recovery of judgment against said estate for the return of such moneys in said or any actions said judgments shall be paid and satisfied out of the assets of said estate and shall not be charged to said Bank.''

Appellant contends that the language of this provision is clear and unambiguous and that it affords no justification for the intervention by the administrators in the action brought by the Texas Company against the bank to compel the bank to return money which was alleged to have been received by the bank for the use and benefit of the Texas Company and in which action no mention was made of the estate and no liability was sought to be imposed upon the bank in its representative capacity.

Respondents contend that the literal construction of the language contended for by appellant is unreasonable and involves an absurdity since if it is to be held that the words mean exactly what they say the effect of the provision is that if a judgment is recovered against the estate, the estate shall be liable for its payment. It is said that literally the language is meaningless since it is obvious that if judgment should be recovered against the estate payment of the amount specified in the judgment would necessarily be made from funds of the estate and only from such funds.

It is our opinion that we are not here called upon to interpret the above-quoted language of the ratification agreement particularly since it appears that actions are now pending in trial courts in which the proper construction of the language is a problem for determination. The question which is here presented is whether or not, in view of the facts and circumstances which the record discloses, the administrators of the estate were justified in incurring the expense represented by the questioned item of $12 for the purpose of intervening in the action brought by the Texas Company against the bank.

■ It must be conceded that, in a proper case, an administrator or executor is justified in intervening in an action in the outcome of which the estate which he represents is interested (11b Cal. Jur., p. 326, sec. 912.) The right of intervention in such a case is governed by the rules which are generally applicable to the subject of intervention.

Section 387 of the Code of Civil Procedure is the statute which authorizes intervention in an action by one who was not originally a party thereto. It provides that "at any time before trial, any person, who has an interest in the matter in litigation, or in the success of either of the parties or an interest against both, may intervene in the action or proceeding." In *Elliott* v. *Superior Court*, 168 Cal. 727, at 734 [145 Pac. 101], it is declared that "The interest mentioned in the code which entitles a person to intervene in a suit between other persons must be in the matter in litigation and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment." In *Isaacs* v. *Jones*, 121 Cal. 257, at 261 [53 Pac. 793, 794, 1101], it is said that the "interest" specified in the above-mentioned section of the code "must be direct and not consequential, and it must be an interest which is proper to be determined in the action in which the intervention is sought". To the same effect are the decisions in *La Mesa etc. Irr. Dist.* v. *Halley*, 195 Cal. 739, 741 [235 Pac. 999], *Lindsay-Strathmore Irr. Dist.* v. *Wutchumna Water Co.*, 111 Cal. App. 707, 710 [296 Pac. 942], and *City of Alhambra* v. *Jacob Beam Realty Co.*, 138 Cal. App. 251 [31 Pac. (2d) 1052].

We think that the estate did have an interest in the suit which was brought by the Texas Company against the bank for·the recovery of bonus money which the bank had admittedly received in its representative capacity as administrator of the estate as consideration for a lease of real property of the estate and which the bank had included as a charge against itself in its final account as administrator of the estate. It is obvious that, if the Texas Company should succeed in its suit and judgment should be rendered against the bank for the recovery of the bonus money, an action would be instituted by the bank against the estate to compel the estate to reimburse the bank in the amount of such judgment. The estate's interest in the matter in litigation was therefore direct and not consequential and it was an interest which was proper to be determined in the action. Under these circumstances, it can hardly be declared that intervention by the administrators in the suit brought by the Texas Company was officious and unwarranted. It is our opinion, therefore, that the

trial court did not err in allowing the item of $12 paid as costs of intervention in said action as a proper item of disbursement.

■ The second item of the account to which objection was made is one which shows payment on September 17, 1932, by the administrators of the sum of $9,825 to certain attorneys. The exact language of this item is as follows: "Sept. 17. Paid W. H. Metson, Preston & Braucht, et al., . . . $9,825.00''. The record shows that the above-mentioned sum represents fees allowed to the attorneys for the present administrators of the estate for extraordinary services by an order of the superior court made on July 11, 1932, which order settled and approved the first annual account of the present administrators. The record also discloses that approximately $2,200 of the amount was paid to the firm of Borton & Petrini and that this firm did not become attorneys of record for the present administrators of the estate until November 28, 1932, when, upon motion of the attorneys who were then representing the administrators, the firm of Borton & Petrini was added to the attorneys of record for the administrators.

Appellant's attack upon this item of the account is evidently based largely upon the fact that the firm of Borton & Petrini, which had represented the Bank of America during the time it acted as administrator of the estate, received a portion of the sum allowed to the attorneys for the present administrators for extraordinary services. As one ground of his attack upon the receipt by the firm of Borton & Petrini of any part of the sum of $9,825 allowed for extraordinary legal services appellant urges that this firm did not become attorneys of record for the present administrators until more than four months after the order allowing the above-mentioned sum was made. He further expresses strenuous objection to the receipt by this firm of any part of the sum allowed for extraordinary legal services for various reasons which have to do with the ethics of the legal profession and involve charges of legal misconduct.

It is our opinion that we are foreclosed from a consideration of the merits of appellant's objections to the item now under consideration by reason of the fact that all of them constitute a collateral attack upon an order which had become final long before appellant's objections were filed.

By its order of July 11, 1932, the probate court determined that the sum of $9,825 was a proper amount to be allowed as fees to the attorneys for the present administrators for extraordinary legal services performed by them and ordered that this amount be paid to the attorneys for such services. This order constituted an adjudication by the court of the matter. After this order became final the allowance of the specified sum occupied the status of a claim against the estate which had been approved by the court. The administrators of the estate were thereupon fully justified in making payment of the amount which the court had found was the proper compensation for extraordinary legal services. The inclusion of the item in the next special account filed by the administrators was proper. In effect it amounted to a statement that the administrators had paid out of the funds of the estate a specified sum which the court had theretofore approved as a proper charge against the estate and had ordered to be paid. The allowance of the amount might have been directly attacked by appeal from the order which directed it to be paid. Since the time for appeal therefrom had expired and the order had become final appellant may not now collaterally attack it by contesting payment of the amount in presenting objections to a later account in which it was included as an item of disbursement.

Appellant, however, contends that he is entitled to object to the allowance of the above-mentioned amount for the reason that he had no legal notice of the hearing at which the allowance was made. The record shows that on February 27, 1930, appellant caused to be filed in the Superior Court of Kern County a document entitled "Notice of Appearance and Request for Special Notice under Section 1380 C. C. P. California." This document was addressed to "the administrator of the Estate of Louis Olcese, deceased, and to Messrs. Borton and Petrini, its attorneys". After stating that appellant gave notice that he entered his appearance in the matter of the estate the document contained a demand that notice be given to him through his attorney therein designated of any and all of various specified proceedings in the administration of the estate. One of the proceedings specifically designated therein was "Filing of Accounts". The document concluded with a statement

that the notice might be addressed to appellant in care of his attorney whose office address was given. The record further shows that the only notice of the hearing of the first annual account of the present administrators of the estate which was given to appellant consisted of a notice which stated that the administrators had on July 1, 1932, filed a verified petition for the settlement of their first annual account, that the same had been set for hearing on July 11, 1932, in the courtroom of department 2 of the superior court in the courthouse in the city of Bakersfield, at which time and place any and all persons interested in the estate might then appear and show cause why the order petitioned for should not be made. This notice specified that it should be posted at the courthouse in Bakersfield at least ten days before the date set for the hearing. Appended to the notice is an affidavit stating that a true and correct copy of the notice was posted at the courthouse in Bakersfield on July 1, 1932.

Appellant contends that he was entitled to special notice of the hearing of the first annual account of the administrators as provided in section 1200 of the Probate Code and that proof of notice by posting was insufficient to confer upon the court jurisdiction to proceed with the hearing of the account and to make the order of July 11, 1932, wherein the court settled and approved the account and allowed the sum of $9,825 as compensation for extraordinary legal services. In connection with this objection, however, the record shows that on February 28, 1933, the day following that on which appellant gave notice of this appeal he entered into a stipulation which is entitled "Stipulation Waiving Notice of Account" and which is in the following language:

"Whereas, Victor Olcese, Jennie Cauzza and Stanley S. Simonson, administrators of the above entitled estate, heretofore filed their 'First Annual Account' which was presented to the above entitled Court and settled by order of Court made in or about June, 1932, said account including transactions from June 12, 1931, to May 21, 1932, and

"Whereas, Olcese Kramer, a party interested in said estate has heretofore asserted that the allowance of said account was improperly made for the reason that no notice

thereof was given to him in compliance with his demand therefor, filed in these proceedings:

"Now therefore, it is stipulated, by Olcese Kramer, that he hereby waives notice of said account and waives objections thereto on the ground that no notice was given to him, provided, however, that such waiver shall not be used or construed as in any way waiving the right of said Olcese Kramer to assert any point made by him on his objections to the special account of said Administrators, covering the period from May 22, 1932, to December 5, 1932, or on his appeal from said order overruling said objections as developed on the evidence taken at said hearing, at any stage of this proceeding or otherwise.

"EDWIN H. WILLIAMS,

"Attorney for Olcese Kramer."

It thus appears that appellant has expressly waived any objection to the settlement of the first annual account on the ground that special notice of its hearing was not given to him in compliance with his demand therefor. ■ The waiver is so qualified, however, that appellant has specifically reserved the right to "assert any point made by him on his objections to the special account of said administrators, covering the period from May 22, 1932, to December 5, 1932, or on his appeal from said order overruling said objections". Unfortunately for appellant, his objections to the special account contain no reference to the failure of the administrators to give him special notice of the hearing of the first annual account. His objection of lack of notice of the hearing of the first annual account which was approved by the order of July 11, 1932, which order had become final before he filed objections to the special account, may not be successfully urged for the first time on this appeal from the order of February 16, 1933, which overruled his objections to the special account and settled and approved the same (*Estate of Rohrer,* 160 Cal. 574, 577 [117 Pac. 672, Ann. Cas. 1913A, 479]).

■ In his objections to the special account of the administrators, appellant attacked one other item of disbursement stated in the account. He has not, on this appeal, mentioned this item and has made no contention that the court erred in disallowing his objection thereto. We are therefore entitled to assume that appellant has abandoned

his attack upon this item which was listed in the account as interest paid on a deficiency income tax of the decedent for the year 1928.

For the reasons stated herein the order from which this appeal has been taken is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 22, 1934.