[Civ. No. 20762. Second Dist., Div. Two. July 13, 1955.]

L. C. FAUS et al., Plaintiffs and Respondents, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Defendants and Respondents; COUNTY OF LOS ANGELES, Intervener and Appellant.

[Civ. No. 20763. Second Dist., Div. Two. July 13, 1955]

J. BENTON VAN NUYS et al., Plaintiffs and Respondents, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Defendants and Respondents; COUNTY OF LOS ANGELES, Intervener and Appellant.

Harold W. Kennedy, County Counsel, and Milnor E. Gleaves, Deputy County Counsel, for Intervener and Appellant.

Paul Overton, Holbrook, Tarr, Carter & O'Neill, W. Sumner Holbrook, Jr., Francis H. O'Neill, Chapman, Frazer & Lindley and D. W. Chapman for Respondents.

FOX, J.—From judgments denying its motions for leave to file complaints in intervention in the above entitled actions, the county of Los Angeles appeals. The parties are agreed that the essential issues are identical with respect to both matters and that the cases be considered together on appeal.

The salient facts are these: Beginning in the year 1903 and continuing until September, 1951, the defendant Pacific Electric Railway Company (hereinafter called the Company), and its predecessors in interest, had used the property here in controversy, a long, narrow strip of land located in the middle of Huntington Drive, in the city of San Marino, as part of its right of way for the operation of interurban streetcars and trains. Huntington Drive is an east-west public highway within Los Angeles County and carries a substantial amount of traffic as it traverses parts of Los Angeles, South Pasadena, Alhamba, San Marino, Arcadia, and unincorporated county territory. After the Company had abandoned certain rights of way in Los Angeles County on November 6, 1951, the Board of Supervisors of Los Angeles County passed a resolution asserting that the acquisition and preserva-

tion for public street purposes of such rights of way was of general county interest (Sts. & Hy. Code, § 1680).[1] Thereafter, during the fiscal years 1952 to 1954 inclusive, the board made budgetary allocations of $900,000 as financial aid for such purposes to several cities.

Plaintiffs in both of the matters before us filed their respective complaints on July 21, 1953, seeking to quiet title in themselves to the separate abandoned right of way strips on Huntington Drive in the city of San Marino. The defendant city of San Marino and the Company filed answers denying the plaintiffs' claims and the city of San Marino asserted present ownership and right to possession and use of the disputed strips. Both cases were first set down for trial on May 12, 1954, but were continued until July 26, 1954, because of a death in the family of one of the Company's counsel immediately prior to the time originally scheduled for trial. About the middle of July the Company moved for a further continuance to effect a substitution of counsel while the city of San Marino moved to substitute City Attorney Martin in the place of the private firm representing it. Both of the new counsel for the defendants Company and city requested additional time to prepare for the trial. A continuance of the cases was granted to October 27, 1954.

On September 13, 1954, the city of San Marino adopted a resolution requesting the county of Los Angeles to extend legal, engineering and other services necessary to the defense of the instant actions. On October 6, 1954, the board of supervisors adopted a resolution to the effect that the acquisition of the abandoned rights of way involved in these appeals for public street purposes was of general county interest, directed that legal and engineering services be furnished the city of San Marino, and authorized the county counsel to intervene in both actions on behalf of the county. On

---

[1]Section 1680 provides in part: "The board of supervisors of any county may, by a resolution adopted by a four-fifths vote of its members, determine that any of the following activities are of general county interest and that county aid shall be extended therefor:

"(a) The laying out, opening, construction, improvement, maintenance, repair, or altering of all or any part of any street within a city . . .

". . . (f) The acquisition of any real property or interest therein, rights of way or other property necessary for any of the purposes mentioned in this section."

County funds may be disbursed for public street improvements when a determination has been made by its board of supervisors that the project is one of general county interest. (*City of Oakland* v. *Garrison*, 194 Cal. 298, 304 [228 P. 433].)

the following day, county counsel and one of his deputies, Milnor E. Gleaves, were substituted as attorneys of record for the city of San Marino in place of City Attorney Martin. On October 8, 1954, Mr. Gleaves filed notice that he would move for a 30-day continuance on October 13, 1954, to prepare himself for these matters. On the same day, Mr. Gleaves petitioned for leave to intervene in both actions. On October 13, 1954, a continuance was granted to January 25, 1955.

On October 14, 1954, the county's motion to intervene in these actions came on for hearing. The county filed therewith a proposed "Complaint in Intervention," reciting the details of the actions taken by the board of supervisors as previously set forth, alleging the county's general interest in the matter and in the success of the city of San Marino in this litigation. No property interest in the disputed land is claimed by the county and the prayer asks for no relief in favor of the county against any of the parties to the action.[2] After taking the matter under submission, the trial court made its orders on November 22, 1954, denying the county the right to intervene. Following the county's appeal, this court issued a writ of supersedeas on December 16, 1954, suspending proceedings below until further order.

The sole question presented is whether the trial court properly refused leave to the county to become a party to the proceedings below. The county contends it "has an interest both in the matter in litigation and in the success of the City of San Marino sufficient to entitle it to intervene." This contention is refuted, however, by a long line of decisions, to which we will subsequently refer, defining the nature of the "interest" a stranger to the record of a pending cause must have before leave to intervene may be granted.

■ The right of a third person to intervene in a pending action is purely statutory. (*Chase* v. *Evoy,* 58 Cal. 348, 355; *Horn* v. *Volcano Water Co.,* 13 Cal. 62, 70 [73 Am.Dec. 569].)
■ Intervention is not a matter of absolute right, but may

---

[2]The prayer of the proposed complaint reads: "WHEREFORE INTERVENTIONER, COUNTY OF LOS ANGELES, PRAYS that plaintiff take nothing by this action, and that the Court adjudge and decree that Defendant, CITY OF SAN MARINO is the owner in fee simple of the real property described in 'Plaintiffs' complaint as amended' herein or, in the alternative, that said city is the owner of an easement for public street purposes thereover; that the Court adjudge and decree that said plaintiffs be forever barred from asserting any right, title or interest of any nature adverse to the rights of said city therein; and that said interventioner be awarded its costs of suit herein, and any other relief as may seem just and proper under the law."

be permitted by leave of court when the petitioner shows facts which satisfy the requirements of section 387 of the Code of Civil Procedure, the statute authorizing intervention by one not originally a party to an action. (*In re Yokohama Specie Bank, Ltd.*, 86 Cal.App.2d 545, 555 [195 P.2d 555].) Section 387 provides in part that at any time before trial, any person who has an interest in the matter in litigation or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. The word "interest" is of crucial significance and has a definite legal meaning in intervention proceedings. It is well settled that the interest referred to must be "in the matter in litigation and of such a direct or immediate character that the intervenor will either gain or lose by the *direct legal operation and effect* of the judgment." (Emphasis added.) (*Allen* v. *California Water & Tel. Co.*, 31 Cal.2d 104, 109 [187 P.2d 393]; *Bechtel* v. *Axelrod*, 20 Cal.2d 390, 392 [125 P.2d 836]; *Jersey Maid Milk Products Co.* v. *Brock*, 13 Cal.2d 661, 665 [91 P.2d 599]; *Elliott* v. *Superior Court*, 168 Cal. 727, 734 [145 P. 101].) Not only must the interest be direct rather than consequential, but "it must be an interest which is proper to be determined in the action in which the intervention is sought." (*Isaacs* v. *Jones*, 121 Cal. 257, 261 [53 P. 793, 1101]; *Bechtel* v. *Axelrod, supra*; *Jersey Maid Milk Products Co.* v. *Brock, supra*; *Schwartz* v. *Schwartz*, 119 Cal.App.2d 102, 104 [259 P.2d 33].)

An analysis of a few representative cases furnishes graphic illustration of the rule that the "interest" of which the statute speaks must involve such an immediate and direct claim upon the very subject matter of the litigation that the intervener will either gain or lose by the *direct operation* of the judgment that may be rendered therein. In *Allen* v. *California Water & Tel. Co., supra*, the city of Coronado sought to intervene in an action involving rights to underground waters of a river basin. The city was obtaining water from the defendant water company pursuant to contract, and asserted its right to intervene on the ground that an adverse decision would affect its water supply. The Supreme Court affirmed the trial court's denial of leave to intervene, resting its decision on the grounds, among others, that the city's interest was indirect. The court stated (p. 109): "Here the city of Coronado has not such an 'interest' . . . as would give it a right to intervene. It has no direct interest or claim to any of the waters involved in the litigation. . . .

Defendant is in no position to claim and never has asserted the attachment of a public use. The city of Coronado, one of its customers, cannot claim and in fact has no greater right in the waters than has defendant itself. . . . The city stands in the same position as that of other water users whose needs are served by defendant either partially or wholly from Tia Juana Basin sources. Its interest is indirect and consequential. Such an interest may not properly be asserted in the supplemental proceedings. It may not therefore serve as a proper subject for intervention.''

In *Bechtel* v. *Axelrod,* 20 Cal.2d 390 [125 P.2d 836], Axelrod was sued as guarantor on a note whose maker had defaulted. Mrs. Axelrod petitioned to intervene, contending that plaintiff, in the event of a favorable judgment, intended to satisfy it out of the community property. In sustaining the disallowance of the petition, the court stated (pp. 392-393) : ''The interest mentioned in the code which entitles a person to intervene in a suit between other persons must be in the matter in litigation and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment. . . . Application of these principles to the present case compels the conclusion that the intervener did not possess an interest legally sufficient to sustain her intervention in the suit which was instituted against her husband for the purpose of adjudicating his liability as the accommodation maker upon the promissory note. The wife would neither gain nor lose by the direct legal operation and effect of a money judgment rendered against her husband, the defendant Axelrod. . . . Granting that it was the plaintiff's intention in the event of his recovery, to attempt to satisfy his judgment from the community property, it is entirely conceivable that the defendant Axelrod might decide to discharge the indebtedness by payment from his separate funds or that the plaintiff might not in fact initiate proceedings to enforce collection. From these observations it is manifest that the intervener's interest in the instant action was remote and contingent and was not of the direct and immediate character required by law to support her intervention.''

In *Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 661 [91 P.2d 599], plaintiff brought an action to enjoin the Director of Agriculture enforcing certain regulations applying to the dairy industry. Other producers and distributors

of dairy products sought to intervene on behalf of the plaintiff, contending they would be affected by the outcome of the case. In declaring their interest to be too indirect to justify intervention, the court pointed out (pp. 664-665) : "Any judgment rendered in said action will have no direct effect whatever upon any person other than the parties to said action. . . . This judgment would in no way be binding upon the interveners as long as they are not parties to said action, and they will be as free to pursue their business after the rendition of said judgment, as they were before. They, therefore, would not gain or lose by the direct operation of the judgment. The legal operation of said judgment will have no direct effect upon interveners. It is true there may be an adjudication that said act is a valid legislative enactment which might serve as a precedent upon any action instituted against interveners for the violation of the terms of said act and to that extent it might be said that the interveners have an interest in the matter in litigation, but as the judgment so rendered would have no binding effect upon the interveners, as it would upon the parties to this proceeding, and would in no way directly affect them, their interest is not a direct but a mere consequential interest in the matter in litigation."[3]

In *City of Alhambra* v. *Jacob Bean Realty Co.*, 138 Cal.App. 251 [31 P.2d 1052], the city sought to condemn defendant's land for a proposed reservoir. The owner of adjoining land was not permitted to intervene, though her land was threatened with depreciation if the resorvoir was built. The court stated (p. 252) : "The complaint here showing no direct interest in the litigation, but only a consequential interest in the probable use of the property if plaintiff is successful, and no possibility of gain or loss from the direct legal effect of any judgment that might be rendered, we fail to see that any right to intervene is shown. . . . " In *La Mesa etc. Irr. Dist.* v. *Halley*, 195 Cal. 739 [235 P. 999], certain residents of an irrigation district sought to intervene in a mandamus proceeding

---

[3]It may be observed in passing that under section 387 of the Code of Civil Procedure, the petitioners probably had such an ''interest'' as would have permitted their joinder as parties plaintiffs although such ''interest'' did not entitle them to enter the case as interveners. The court recommended that the proposed interveners might desire to file briefs as amici curiae, which would give them ample opportunity to be heard on all of the legal issues in the original action. It is noteworthy that in the cases at bar, the county counsel is actively in charge of the litigation in behalf of the city of San Marino and may be expected to zealously safeguard county interests against plaintiffs' claims.

brought by the irrigation district to compel the officers thereof to sign and attest certain bonds. The grounds of intervention were that the bonds were invalid. Although the bonds, if issued, would constitute a lien on their property, the court held that their interest in the mandamus proceeding was too remote and contingent, since only after a sale of the bonds would the lien arise. The court stated (pp. 741-742: "It is difficult to see how the petitioning interveners can gain or lose by any judgment which may be entered in that proceeding. If the writ be granted, the enforcement of the judgment would not directly affect their property interests. The bonds, when signed and attested, would not be a lien on their property, although, if thereafter sold, they may lead to the creation of a lien [citation]. Nor would compliance with the writ, if issued, create a cloud upon their title. If the respondents sign and attest the bonds they must be sold before the lands of the proposed interveners may be taxed to pay the principal and interest thereof. . . . The bonds may never be sold. The present plans for the acquisition of an additional water supply and a distributing system may be abandoned. It is clear that the interest of the petitioning interveners is remote and contingent and not of the direct and immediate character required by law."

Measuring the country's right to intervene by the well-settled propositions set forth above, it is clear that its interest in the pending cases is not direct, immediate or proximate but is simply consequential and indirect. The actions at bar are suits to quiet title to real property. The county's proposed complaint in intervention asserts no right, title or interest in that property in itself, neither does it ask for any specific relief in favor of the county. Its prayer requests that the court find that title is in the city of San Marino. It is thus obvious that the county does not stand in the position of one interested in the outcome or result of an action because it has any legal right in the subject matter of the litigation which will be directly and immediately affected by the operation of the judgment or because of any interest which is proper to be determined in the action in which intervention is sought. It is true that under 1680 of the Streets and Highways Code the board of supervisors is empowered to determine the existence of a *general* county interest in a street within a city as a legal condition precedent to the appropriation of county funds for the improvement of such street. But the mere passing of a resolution by the board of supervisors evincing such gen-

eral interest in a particular property is not the equivalent of an interest answering the description required by section 387 as a *sine qua non* for the exercise of the right of intervention in litigation between others regarding the ownership of said property. The county is a stranger to the property here in question. It has no "interest" of such a direct and immediate character that it will either gain or lose by the direct legal operation and effect of any judgment that may be rendered in the within actions. (*Jersey Maid Milk Products Co.* v. *Brock, supra; Allen* v. *California Water & Tel. Co., supra.*) ▉ It has no "interest" therein that may be determined by those actions nor any rights which can be directly enlarged, diminished or foreclosed by any judgment rendered. (*Isaacs* v. *Jones, supra; City of Alhambra* v. *Jacob Bean Realty Co., supra; Lindsay-Strathmore Irr. Dist.* v. *Wutchumna Water Co.*, 111 Cal.App. 707, 710 [296 P. 942]; *Estate of Olcese*, 1 Cal.App.2d 72, 78 [36 P.2d 215].)

▉ The county's argument that if the city prevails county funds will not have to be expended for the acquisition of the strips for street purposes, does not transform the county's interest into one that is of a direct or immediate character such as required by the law to support intervention. (*Bechtel* v. *Axelrod, supra; La Mesa etc. Irr. Dist.* v. *Halley, supra; People* v. *Brophy*, 49 Cal.App.2d 15, 34 [120 P.2d 946].) This possibility, that additional county funds might ultimately have to be expended in the event of a judgment adverse to the city, may be an indirect or consequential result of such judgment, but it certainly would not flow directly therefrom. (*Allen* v. *California Water & Tel. Co., supra.*) Furthermore, in the event title were found to be in the plaintiffs, the city might well elect to acquire title itself to the strips from the owners by condemnation proceedings (Code Civ. Proc., § 1241), or the owners might be willing to dedicate the strips for public purposes. But however that might be, in all events the county's petition for intervention must fail for lack of requisite interest under the authorities cited.

The county also maintains that it comes within the purview of section 387 because of its interest in the success of the city in the quiet title actions. But as pointed out in *Bernheimer* v. *Bernheimer*, 87 Cal.App.2d 242, 247 [196 P.2d 813], the interest in the success of a party must likewise be of "such present, direct and immediate character that the in-

tervener will either gain or lose by the *direct* effect of the judgment.'' (Emphasis added.) That such interest is here absent appears from the foregoing discussion.

The orders are affirmed.

Moore, P. J., and McComb, J., concurred.