[Civ. No. 7735.   Fourth Dist., Div. Two.   Mar. 24, 1966.]

THE PEOPLE ex rel. PUBLIC UTILITIES COMMISSION, Plaintiff and Appellant, v. DAVID F. RYERSON et al., Defendants and Respondents.

Richard E. Tuttle, Harold J. McCarthy, John C. Gilman, Mary Moran Pajalich and Roderick B. Cassidy for Planitiff and Appellant.

Reid, Babbage & Coil, Enos C. Reid and Michael H. Clepper for Defendants and Respondents.

TAMURA, J.—Pursuant to an investigation, decision and order of the Public Utilities Commission a carrier brought an action against a shipper to recover undercharges. Based upon

a stipulation of facts entered into by the parties, judgment was entered for the shipper. The question presented on this appeal is whether the Public Utilities Commission in the name of the People may maintain an independent equitable action to vacate the judgment on grounds of extrinsic fraud or mistake and lack of jurisdiction in the court to render the judgment.

The carrier, respondents Ryerson and Phillips, doing business as partners under the name of Phillips Trucking Company, (hereinafter referred to as Phillips), operates as a radial highway common carrier (Pub. Util. Code, § 3516) and highway contract carrier (Pub. Util. Code, § 3517) pursuant to permits issued by the commission,[1] and as such is subject to the applicable minimum rate tariffs and regulations promulgated by the commission including a regulation known as Item 85-A of Minimum Rate Tariff No. 2. Item 85-A provides in substance that before a shipment in multiple lots may qualify for a single shipment rate, the entire shipment must be available and tendered at one time, a single shipping document must be issued prior to or at the time of the first pickup, and the entire shipment must be picked up within two days, exclusive of holidays.

In 1958, the commission commenced an investigation into the operation and practices of Phillips. Following a public hearing it rendered its decision on September 18, 1958, finding, *inter alia,* that Phillips undercharged respondent American Cement Corporation, (hereinafter referred to as American) by charging multiple lot shipment rates for certain shipments in 1957 without issuing shipping documents in conformity with Item 85-A. The commission directed Phillips to examine its records for the entire period from January 1, 1957, to the effective date of the order to determine whether any additional undercharges occurred during that period and to take such action as may be necessary to collect them, as well as those specifically found by the commission. Pursuant to that decision and order, Phillips filed an action against American to declare the rights of the parties under the commission's

[1]The terms ''highway contract carrier'', ''radial highway common carrier'' and ''highway common carrier'' have been described as follows: ''A 'highway contract carrier' is not a public carrier, but both a 'radial highway common carrier' and a 'highway common carrier' are common carriers, the difference being that the radial common carrier does not, while the highway common carrier does, operate between fixed termini *or* over a regular route.'' (*Talsky* v. *Public Utilities Com.,* 56 Cal.2d 151, 162 [14 Cal.Rptr. 325, 363 P.2d 341].)

decision and order and prayed that the court adjudge American to be indebted to Phillips for a certain sum undisclosed by the pleadings in this case. American answered denying the undercharges and cross-complained for a decree "that said manifest freight bills of plaintiff be reformed to express the true agreement of the parties." Phillips and American thereafter filed an agreed statement of facts in which it was stipulated that "plaintiffs by mistake issued manifest freight bills which did not show the true agreement between the parties insofar as the same were not in accordance with the requirement of said Item 85-A that plaintiffs issue a single shipping document for each shipment of multiple lots."

Pursuant to the stipulation the court entered its judgment on October 14, 1960, decreeing that there was no duty owing from American to Phillips under the decision and order of the commission and that the freight bills issued by Phillips be "reformed to show that they were issued under single shipping documents complying with the applicable rules and regulations" of the commission.

On August 16, 1961, the Public Utilities Commission, in the name of the People, filed the present action to vacate the judgment.

In addition to the foregoing facts, the complaint as amended alleged that there was no mistake in the issuance of freight bills by Phillips, that the stipulation and judgment were collusive, that no notice was given to the commission of the stipulation as proposed or as entered, and that the court lacked jurisdiction to render the judgment by virtue of section 1759 of the Public Utilities Code. Section 1759 provides in substance that no court, except the Supreme Court, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to interfere with the commission in the performance of its official duties.

Following an order sustaining a general demurrer to the complaint as amended, with leave to amend, the People declined to further amend and submitted to the court a judgment of dismissal, which was duly signed and entered.[2] This is an appeal from that judgment.

---

[2]Pursuant to a motion by respondents herein on May 25, 1962, the judgment of dismissal was vacated by the trial court. The People appealed from the order granting the motion and this court reversed and directed the entry of an order denying the motion to vacate, thus reinstituting the judgment of dismissal. (*People* v. *Ryerson, et al.*, 4th Civ. No. 7153.) (January 22, 1964.)

The People seek to have the judgment in the undercharge action vacated on two independent grounds: (1) that the judgment was obtained by extrinsic fraud or mistake and (2) that the court lacked jurisdiction to grant the relief decreed.

█ A party or one in privity with him who has been prevented from obtaining a fair adversary hearing through extrinsic fraud or mistake may bring an equitable action to vacate the judgment. (*Olivera* v. *Grace*, 19 Cal.2d 570 [122 P.2d 564, 140 A.L.R. 1328]; *Bennett* v. *Hibernia Bank*, 47 Cal.2d 540 [305 P.2d 20].) A stranger may maintain such an action if his interests have been adversely affected by the judgment. (*Babbitt* v. *Babbitt*, 44 Cal.2d 289, 293 [282 P.2d 1]; *Campbell-Kawannanakoa* v. *Campbell*, 152 Cal. 201 [92 P. 184]; *Anderson* v. *Bank of Lassen County*, 140 Cal. 695 [74 P. 287]; *Harada* v. *Fitzpatrick*, 33 Cal.App.2d 453 [91 P.2d 941].)

Respondents contend that the People do not have a sufficient interest to have entitled them to intervene in the undercharge action. █ The interest necessary for intervention "must involve such an immediate and direct claim upon the very subject matter of the litigation that the intervener will either gain or lose by the *direct operation* of the judgment that may be rendered therein." (*Faus* v. *Pacific Electric Railway Co.*, 134 Cal.App.2d 352, 356 [285 P.2d 1017]; *Muller* v. *Robinson*, 193 Cal.App.2d 835 [14 Cal.Rptr. 693]; *People* ex rel. *State Lands Com.* v. *City of Long Beach*, 183 Cal.App.2d 271 [6 Cal.Rptr. 658].) █ While the interest is normally pecuniary, that is not an indispensable element. (*County of San Bernardino* v. *Harsh California Corp.*, 52 Cal.2d 341 [340 P.2d 619]; *Baroldi* v. *Denni*, 197 Cal.App.2d 472 [17 Cal.Rptr. 647].) In *County of San Bernardino* v. *Harsh California Corp.*, *supra*, the court held that the United States was entitled to intervene in an action to recover taxes on a lessee's possessory interest in a Wherry Act Military Housing Project. In defense of the action, the lessee relied upon a federal statute which provided that it shall be entitled to a tax credit for any expenditures made by the federal government or the lessee for street and utility maintenance services normally provided by the county. The court held that while the government had no pecuniary interest in the action, its interest in an adjudication respecting the validity of the statute and its proper interpretation was sufficient for intervention.

The interest of the People in maintaining the integrity of the order of the Public Utilities Commission is clearly sufficient. The collection of undercharges, as was here ordered by the commission, has been held to be one of the most effective means of preserving the minimum rate structure and of eliminating collusion between carriers and shippers. (*Gardner* v. *Rich Mfg. Co.*, 68 Cal.App.2d 725, 731-732 [158 P.2d 23]; *Butler* v. *Bell Oil & Refining Co.*, 70 Cal.App.2d 728, 730 [161 P.2d 559].)[3] In *Butler* v. *Bell Oil & Refining Co.*, *supra*, in reply to shipper's contention in defense of an undercharge action that the commission had no jurisdiction over it, the court stated at page 731: "The collection of undercharges, however, is simply a step toward making the authorized regulation of highway carriers more effective. It is in furtherance of the purposes of the act, among which are the establishment of just and reasonable rates and the prevention of discrimination. (*Gardner* v. *Rich Mfg. Co.*, *supra*, p. 729.) As pointed out in *Johnson* v. *L. B. Hartz Stores* (1938) 202 Minn. 132 [277 N.W. 414, 416], 'the permitting of such a recovery is a much more effective way of enforcing the law than any other could possibly be.' Fines and penalties may be imposed on the carrier for violating the minimum schedule of rates fixed by the commission, but, as is also pointed out in the Johnson case, 'the pressure of the shippers upon the carriers for reduced rates in violation of the statute will almost entirely be relieved if the shippers know that notwithstanding any illegal bargain that is made, recovery may still be had on the basis of the minimum rate fixed by the commission. Collusion between the carrier and the shipper to circumvent the law, which would otherwise be easy of accomplishment, will be practically eliminated.' "

Respondents contend that the People have not alleged facts showing extrinsic fraud or mistake. ■ The complaint as amended, however, alleges that there was no mistake on the part of the carrier in issuing freight bills which did not comply with requirements of Item 85-A, that the carrier colluded with the shipper in entering into the stipulation of facts for the purpose of enabling the shipper to obtain, with respect

---

[3]In 1963 the Legislature added section 2100, relating to common carriers generally, and section 3800, relating to highway carriers, to the Public Utility Code. They provided in part that whenever the commission, after a hearing, finds that a carrier has undercharged, the commission "shall require the carrier to collect the undercharges involved and may impose upon the carrier a fine equal to the amount of such undercharges."

to numerous separate shipments, the benefit of the lower multiple lot rates, and that the judgment was entered on the basis of the collusive stipulation. It is further alleged that no notice was given to the commission of the proposed stipulation or of its filing with the court although its decision and order required the carrier to keep the commission informed of the progress made in collecting undercharges.

In passing upon a demurrer, those facts must be deemed to be true. ■ A collusive judgment adversely affecting the rights of third persons may be set aside on the ground of extrinsic fraud. (*Harada* v. *Fitzpatrick*, 33 Cal.App.2d 453, 459 [91 P.2d 941] ; *Babbitt* v. *Babbitt*, 44 Cal.2d 289, 293 [282 P.2d 1] ; *Anderson* v. *Bank of Lassen County*, 140 Cal. 695, 698 [74 P. 287].) (See Code Civ. Proc., § 1916.) In *Babbitt* v. *Babbitt, supra,* a husband commenced living with Agnes, not his spouse, and acquired property in her name. In an action against the husband by Agnes for ejectment the parties entered into a stipulated judgment that each should take a one-half interest in the property. The wife sued for a divorce and joined Agnes praying that it be decreed that Agnes hold the property in trust for the community. In affirming a judgment awarding the property to the wife, notwithstanding the prior stipulated judgment, the court stated (44 Cal.2d 289 at p. 293) : "It was properly held that such an agreed judgment was in effect merely a compromise among wrongdoers in a controversy between themselves as to a division of the spoils. On no principle of right or justice should that judgment be deemed binding on the plaintiff."

■ We conclude that the complaint as amended alleges facts sufficient to constitute a cause of action for equitable relief on the ground of extrinsic fraud.

The People also contend that the complaint as amended alleges sufficient facts to show that by virtue of section 1759 of the Public Utilities Code the court had no jurisdiction to grant the relief decreed. That section provides: "No court of this State, except the Supreme Court to the extent specified in this article, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, except that the writ of mandamus shall lie from the Supreme Court to the commission in all proper cases."

■ The judgment entered pursuant to the stipulation between the carrier and shipper is in conflict with the commission's decision and order. The commission found that Phillips undercharged by charging the lower multiple lot rates without issuing shipping documents in compliance with Item 85-A. The judgment decreeing that there was no duty owing from the shipper to the carrier under the commission's decision and order constituted, in effect, a judgment reviewing and annulling the order of the commission and, hence, was in excess of the court's jurisdiction. Nor is the conflict dissipated by that portion of the decree purporting "to reform" the freight bills issued by Phillips "to show that they were issued under a single shipping document complying with the applicable rules and regulations" of the commission. ■ The tariff regulations became a part of the contract of shipment and the applicable rates became fixed when the shipments were made. (*Gardner* v. *Rich Mfg. Co.*, 68 Cal.App.2d 725 [158 P.2d 23].) Neither the rates nor regulations of the commission may be modified by agreement of the parties, even on the ground of mistake. (*Butler* v. *Bell Oil & Refining Co.*, 70 Cal.App.2d 728, 730 [151 P.2d 559] ; *Transmix Corp.* v. *Southern Pac. Co.*, 187 Cal.App.2d 257 [9 Cal.Rptr. 714].) Compare *Kentner Truck Line, Inc.* v. *Maier Brewing Co.*, 183 Cal.App.2d 89, 93 [6 Cal.Rptr. 572] where, in an undercharge action, the court summarily rejected the defendant shipper's contention that it was the carrier's duty to comply with the terms of Item 85-A of Highway Carrier's Tariff No. 2 and that had it done so the rate which was actually charged and paid would have been applicable. The court stated at page 93 : "Defendant refers to no authority which recognizes the existence of the duty on the part of a carrier to so manage the affairs of a consignor as to specify the size of his shipments. Our own research has produced none and in our opinion no such duty exists."

To hold that the shipping documents can be "reformed" on the facts set forth in the stipulation and in the manner decreed would not only nullify the decision and order of the commission but would virtually render ineffective Item 85-A of the tariff regulation. For the foregoing reasons, the judgment was in excess of the court's jurisdiction (*Pratt* v. *Coast Trucking Co.*, 228 Cal.App.2d 139 [39 Cal.Rptr. 332] ; Public Utilities Code, section 1759).

■ Although a court may have jurisdiction of the subject matter, if it grants relief in excess of its power, the judgment

is subject to a direct attack. (*City & County of San Francisco v. Superior Court,* 53 Cal.2d 236 [1 Cal.Rptr. 158, 347 P.2d 294].) ▆ An equitable action to vacate a judgment is a direct attack. (*Bennett v. Hibernia Bank,* 47 Cal.2d 540, 558 [305 P.2d 20] ; *County of Alameda v. Clifford,* 187 Cal.App.2d 714 [10 Cal.Rptr. 144] ; *Sternbeck v. Buck,* 148 Cal.App.2d 829 [307 P.2d 970].)

It is our conclusion that the complaint as amended alleges facts sufficient to constitute a cause of action for equitable relief on grounds of extrinsic fraud and lack of jurisdiction.

The judgment is reversed.

McCabe, P. J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 18, 1966.