[Civ. No. 2335. Fourth Appellate District.—June 21, 1939.]

M. HARADA, Respondent, v. JOHN A. FITZPATRICK et al., Appellants.

Wilmer Breeden for Appellants.

Rorick & Cottingham and Wright, Monroe & Harden for Respondent.

MARKS, J.—This is an appeal by John A. and James F. Fitzpatrick from a judgment vacating an order which modified an interlocutory decree of divorce on the ground that the order was obtained by extrinsic fraud. (Sometimes in the record James F. is called James V. Fitzpatrick.) Defendant Verna N. Fitzpatrick, who was the defendant in the divorce action has not appealed.

John A. Fitzpatrick and Verna N. Fitzpatrick were husband and wife. James F. Fitzpatrick is their son. They had another son and two daughters.

Mr. and Mrs. Fitzpatrick owned thirty-five acres of farming land near Oceanside, in San Diego County. Title to seventeen acres stood in their names as joint tenants. Title to the other eighteen acres, which was community property, stood in the name of John A. Fitzpatrick.

On September 17, 1932, John A. Fitzpatrick filed a complaint for divorce on the grounds of desertion and extreme cruelty. The complaint alleged the ownership of the thirty-five acres of land and that "by agreement between the parties to this suit, the defendant is to have possession of said real estate, and is to have the care, custody, control and support of said children."

On October 13, 1932, Mrs. Fitzpatrick made default and John was granted an interlocutory decree of divorce. The court found all the allegations of the complaint to be true. The interlocutory decree did not attempt to dispose of the title to the community property. It did provide:

"That the defendant have the possession and rents and profits of and from the 35-acre tract mentioned in the complaint, together with the household furniture, fixtures and equipment on said real estate, and that she shall have the care, custody and control of James F. Fitzpatrick, Dorothy Fitzpatrick, William Fitzpatrick and Margaret Fitzpatrick, children of the plaintiff and defendant; all to the further order of the court."

On August 31, 1933, Verna N. Fitzpatrick, as lessor, leased the thirty-five acres, less one and one-half acres and the buildings thereon, to M. Harada for fifteen years, from December 1, 1933, to December 1, 1948, at an annual rental of $400 for the first six years, and at an annual rental of not less than $300 nor more than $500 for the balance of the term, the amount to be agreed upon by the parties or fixed by arbitration.

The lease recited that Mrs. Fitzpatrick had the right of possession of the land under the interlocutory decree of divorce; that about one-half of the land was the joint tenancy property of Mr. and Mrs. Fitzpatrick and that title to the balance stood in the name of John A. Fitzpatrick but was claimed by the lessor to be community property.

The lease provided that in case Mrs. Fitzpatrick lost the right of possession of the land, the lease should be terminated without any cause of action arising against the lessor.

Mrs. Harada went into possession of the leased premises and up to December 1, 1936, expended over $15,000 in improving it. She planted it to asparagus, which, by December 1, 1936, had sufficiently developed to give promise of being a very profitable crop. The evidence shows that it takes three or four years to develop asparagus to the point of being profitable; that during the fourth or fifth year of the life of the plants they should for the first time produce sufficiently to show a profit; that they will continue to so produce for about ten years.

From December 1, 1933, to December 1, 1935, the rent was paid to Mrs. Fitzpatrick. She gave one-tenth of it to

her church and used the balance for the payment of back taxes and for living expenses of herself and her children. During the latter part of that period James F. Fitzpatrick demanded that the rent be paid to him as he objected to the tithe being paid to the church. He threatened to have his mother committed to a psychopathic ward and under this threat she permitted him to collect the rent for about one year. Prior to December 1, 1936, Mrs. Fitzpatrick informed James that she was going to return to the old method of collecting the rent herself and of paying the tithe to the church. James requested Mrs. Harada to withhold the payment of rent due on December 1, 1936, informing her that there was a dispute as to whom it should be paid.

John A. Fitzpatrick had been living near Fresno, California, for several years prior to December 1, 1936. He had visited his family about twice each year and knew of the lease, the improvements put upon the land by Mrs. Harada, the condition of the asparagus and the prospects of its becoming a profitable crop.

James went to see his father and discussed the modification of the interlocutory decree of divorce to the end that John, instead of Verna, would be given possession of the land and the lease with Mrs. Harada terminated. A few days later John came to San Diego and with his son went to the office of an attorney and consulted with him on this matter. James took the lease from the possession of his mother and exhibited it to this attorney who had also read the interlocutory decree of divorce. They were advised that if this decree were modified so that possession of the leased land would be taken away from Verna and given to John the lease would be terminated automatically.

An affidavit was prepared on December 8, 1936, and an order was issued on the same day requiring Mrs. Fitzpatrick, on December 14, 1936, to show cause why the interlocutory decree should not be modified. A copy of the affidavit and order to show cause were served on Mrs. Fitzpatrick by her son James on December 8, 1936. She did not appear at the hearing, either in person or by counsel, and the decree was modified, taking the possession of the land away from her and giving to John the ''possession and control and the rents and profits'' of the leased land. He was ordered to pay Mrs. Fitzpatrick $20 per month for the support of their minor

daughter Margaret. He admitted during the trial of this action which started on November 16, 1937, that he had paid nothing under this order.

In the affidavit of John A. Fitzpatrick it is stated that Mrs. Fitzpatrick "became irrational and nervous and unable to properly take care of the property and the rent and income from the same and to properly transact business and to realize the nature and effects of her acts; . . . that defendant is now in what affiant regards as a mildly psychopathic condition, that she suffers from hallucinations, and hysteria, hears voices, and speaks in what she calls tongues which is nothing but the utterance of mysterious and imaginary words from no human language." The attorney who prepared and filed this affidavit and represented John on the hearing of the order to show cause did not ask for the appointment of a guardian *ad litem* for Mrs. Fitzpatrick. These averments, if true, may explain why she did not appear to resist the move to modify the interlocutory decree. We must assume that John believed them to be true because he swore to the truth of the affidavit. They furnish ample ground for the conclusion that John A. Fitzpatrick believed, that because of her mental condition, Mrs. Fitzpatrick would not understand the nature or purpose of the proceeding and would not resist it; that the decree would be modified at an *ex parte* hearing without his having to disclose his purpose or the real situation that existed; that thereby his scheme of dispossessing Mrs. Harada could be consummated easily. On January 7, 1937, a final decree of divorce was rendered.

On December 31, 1936, John A. Fitzpatrick served on Mrs. Harada written notice of the modification of the decree; that her lease was ended and terminated; that all the future arrangements in regard to the leased property should be made with him. On February 1, 1937, he served on Mrs. Harada a demand for possession of the property. In March, 1937, he filed an unlawful detainer action in the Justice's Court of Oceanside Township. Immediately thereafter plaintiff instituted this action to cancel and annul the order modifying the interlocutory decree of divorce and to enjoin further proceedings in the justice's court.

Before passing from the statement of facts it should be observed that Mrs. Fitzpatrick defaulted in this action; that she did not obey a subpoena served on her requiring her

presence as a witness for plaintiff; that she was brought into court on a bench warrant; that she testified that she knew it was the purpose of John A. and James F. Fitzpatrick in seeking a modification of the interlocutory decree of divorce to defraud plaintiff out of her lease and investment. The trial court on ample evidence found that she knew that the proceeding to modify the decree "was to be made for the purpose of defeating the rights of the plaintiff in and to said lease and destroying plantiff's lease on said premises, and of obtaining possession of the crop. . . . "

The trial court found all facts in favor of plaintiff; that John A. and James F. Fitzpatrick had conspired together to secure modification of the interlocutory decree for the purpose of defrauding plaintiff out of her leasehold interest; that Mrs. Fitzpatrick, while not an active conspirator, had knowledge of the conspiracy and its purposes and did not resist the move to modify the decree; that the fact of plaintiff's lease and the investment by her of a large sum of money on the leasehold, and the terms of the lease providing for the forfeiture of plaintiff's leasehold estate in the event Mrs. Fitzpatrick lost possession of the property through modification of the interlocutory decree, were concealed from the trial judge who signed the order modifying the decree; that had these facts been disclosed to the trial judge he would not have modified the decree.

■ Appellants urge that plaintiff was given notice of the move to modify the decree; that as she then had the opportunity to protect her rights, and failed to do so, she should not be heard to complain now. This argument is based on the following writing given to plaintiff:

"Dec. 9, 1936.

"The rent was withheld till farther orders of the court, and no fault of the rentee.

"MRS. VERNA FITZPATRICK."

Plaintiff had attempted to pay her rent due on December 1, 1936, which payment was not accepted. The writing was given for the sole purpose of showing she was not in default under the terms of the lease. No other construction should be placed upon it. It did not inform her of appellants' move to have the decree modified.

We will not consider the many contentions made by appellants as we regard them unnecessary to our decision. A

discussion of them would merely result in burdening this opinion with consideration of technical questions which cannot affect the result here.

It cannot be doubted that there is ample evidence in the record (including direct admissions of both appellants while on the witness stand) which support the findings that John A. and James F. Fitzpatrick entered into a conspiracy to defraud plaintiff, and that Mrs. Fitzpatrick gave her tacit consent to the conspiracy and its purpose, which was known to her, by her failure to inform plaintiff of what was being done; that in consummating this conspiracy appellants concealed from the trial judge the very material facts of the lease and the large investment of plaintiff in the leased premises together with the further facts that her lease would be terminated automatically; that she would be ousted and her investment would be lost should the decree be modified as contemplated. This constituted extrinsic fraud on the trial court. (*Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201 [92 Pac. 184].)

A judgment obtained by extrinsic fraud may be set aside and annulled by a court of equity. (*McGuinness* v. *Superior Court,* 196 Cal. 222 [237 Pac. 42, 40 A. L. R. 1110]; *Follette* v. *Pacific Light & Power Corp.,* 189 Cal. 193 [208 Pac. 295, 23 A. L. R. 965]; *Rehfuss* v. *Rehfuss,* 169 Cal. 86 [145 Pac. 1020]; *Herd* v. *Touhy,* 133 Cal. 55 [65 Pac. 139].)

A person, not a party to the action in which the extrinsic fraud is perpetrated, who is adversely affected by the judgment, may bring an action in equity to vacate it. (*Bowman* v. *Bowman,* 97 Cal. App. 613 [275 Pac. 1023]; *Associated Oil Co.* v. *Mullin,* 110 Cal. App. 385 [294 Pac. 421]; *Estate of Ince,* 98 Cal. App. 763 [277 Pac. 886]; *Baar* v. *Smith,* 97 Cal. App. 398 [275 Pac. 861].)

The judgment is affirmed.

Barnard, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 18, 1939.