[Civ. No. 11984. First Dist., Div. Two. Oct. 13, 1942.]

CONSOLIDATED ROCK PRODUCTS CO. (a Corporation), et al., Appellants, v. MARGARET HIGGINS, Respondent.

F. Britton McConnell for Appellants.

Joseph Shane for Respondent.

STURTEVANT, J.—On November 26, 1937, Charles E. Higgins, while employed by and in the course of his employment by one of plaintiffs, the Consolidated Rock Products Co., a corporation, was injured. At that time the other

plaintiff, Pacific Employers Insurance Company, was the employer's insurance carrier. As a result of said injury said Charles E. Higgins died on the date of the injury. Later the defendant, claiming to be the surviving widow of said decedent, filed an application with the Industrial Accident Commission asking said commission to establish her claim against the plaintiffs. The plaintiffs appeared before said commission and, among others, they presented the contention that the defendant, Margaret Higgins, had been married to the decedent but that long prior to the date of his death said marriage had been dissolved by a valid decree of divorce and that at the time of the injury no relation existed between the defendant and the decedent. The defendant controverted that contention. The Industrial Accident Commission held the issue was one in equity which should be so heard and determined. It suspended the proceedings before said commission, and this action was commenced to obtain a decree that the said defendant should be enjoined from making a claim or contending that she was the surviving widow of said decedent within the meaning of subdivision (a), section 3501 of the Labor Code. The issues were many but each was fully examined. The findings of the trial court were against the plaintiffs and in favor of the defendant. From the judgment entered thereon the plaintiffs have appealed.

The pleadings are very long. The reporter's transcript contains about 800 pages. The findings are long and dispose of every issue made by the pleadings. However, the story is short. The material issue is equally short. ▓ It was the contention of the plaintiffs that the defendant Margaret Higgins had been divorced from the decedent and that a final decree had been entered prior to the death of the latter. The defendant on the other hand contended that she and the decedent intermarried, that later the decedent commenced an action against her for divorce, that he obtained an interlocutory decree, that later a final decree was entered, and thereafter said final decree was set aside; and therefore, she was the surviving wife of the decedent. In reply the plaintiffs contended that the order setting aside the final decree was obtained through the fraudulent practices of the defendant. The contention last stated presents the one material question involved in the controversy. It involves the right of these plaintiffs to attack the orders and judgment

in the divorce case hereinabove mentioned. The rule applicable is stated in 34 C. J. 526: "Judgments", section 832, as follows: "A stranger to the record, who was not a party to the action in which the judgment was rendered nor in privity with a party, is not prohibited from impeaching the validity of the judgment in a collateral proceeding; but in order to do so he must show that he has rights, claims, or interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition, unless the judgment is absolutely void. Thus situated he may attack the judgment on the ground of want of jurisdiction, or for fraud or collusion; but he cannot object to it on account of mere errors or irregularities, or for any matters which might have been set up in defense to the original action." See, also, 15 Cal. Jur. 56; 31 Am. Jur. 192; 15 R. C. L. 841. The plaintiffs' contention was fully presented by the pleadings. It was fully tried out in the trial court and thereafter the trial court made findings against the plaintiffs and in favor of the defendant on said issue. In this connection the trial court heard much evidence and afterwards made findings to the effect that after the aforesaid interlocutory decree was entered Mr. and Mrs. Higgins became reconciled, lived together as man and wife, and at the time the final decree was entered that they were living together as man and wife. In this connection the findings negative a want of jurisdiction and negative the commission of any act of fraud or collusion.

Continuing the plaintiffs specify certain alleged errors and irregularities and matters which might have been set up in defense in the divorce action and claim to rely thereon. However, they have no right to do so. (*Hall* v. *Brittain,* 171 Cal. 424 [153 Pac. 906]; *Dunn* v. *Dunn,* 114 Cal. 210 [46 Pac. 5]; *Agoure* v. *Peck,* 17 Cal. App. 759 [121 Pac. 706].) As noted above the trial court in the instant case made a finding that the trial court in the divorce case had jurisdiction thereof and of all of the parties. The record in the divorce case does not show that the judgment or the order setting aside the final decree was void. It follows that any mere irregularities in the proceedings in the divorce case could be attacked only in the divorce action.

The plaintiffs cite *Herbert* v. *Lankershim,* 9 Cal. (2d) 409 [71 P. (2d) 220], and then they say: "However, the supreme court, recognizing its duty in protecting parties

litigant in just such a situation as was there presented, examined the evidence very carefully 'in the light of reason and human experience and giving consideration to the motives and propensities which tend to influence or prompt human action,' and using its own judgment, decided that the evidence upon which the judgment was based was so inherently improbable that it constituted no evidence at all sufficient to support the judgment. That is exactly what we contend here. . . .'' We have carefully read the statement. We find nothing in the record before us which warrants its application to the instant case.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 7, 1942.