[Civ. No. 25534. First Dist., Div. One. June 9, 1969.]

WILLIAM J. HICKEY, Plaintiff and Appellant, v. W. H. ROBY et al., Defendants; THE PEOPLE ex rel. PUBLIC UTILITIES COMMISSION, Intervener and Respondent.

Howard M. Downs, Stuart R. Pollak, Jerome B. Falk, Jr., and Howard, Prim, Smith, Rice & Downs for Plaintiff and Appellant.

Mary Moran Pajalich, Roderick B. Cassidy, J. Thomason Phelps, Cyril M. Saroyan and Leonard L. Snaider for Intervener and Respondent.

ELKINGTON, J. — William J. Hickey, plaintiff below, appeals from an order of the superior court setting aside a permanent injunction which purported to enjoin defendant Vallecito Water Company (Vallecito), defendant Camille Garnier, Vallecito's president, and defendant W. H. Roby, Vallecito's secretary, from "transferring, cancelling or reversing" on Vallecito's books without Hickey's consent, 18,003 shares of Vallecito stock registered to Hickey. Defendants Vallecito, Garnier and Roby have made no appearance on this appeal. The only respondent is the California Public Utilities Commission appearing, as permitted by Public Utilities Code section 2101, in the name of the People of the State of California. (Unless otherwise stated, all statutory references hereinafter will be to Public Utilities Code.) The commission had intervened in the superior court action. It was on the commission's motion that the subject injunction was set aside.

This appeal is one of 16 proceedings of one kind or another commenced before different tribunals by the various parties, all relating to the subject matter of this appeal—Hickey's claim to 18,003 shares of Vallecito stock. Those proceedings include an action numbered 558,551 commenced in the Superior Court of the City and County of San Francisco, for the purpose of quieting title to the stock.

█ The parties disagree as to what constitutes the record on this appeal. Somewhat informally the superior court was asked by the commission to consider the following reported decisions: *Re San Gabriel Water Company*, 61 Cal. P.U.C. 509, Decision No. 66140; *Re Vallecito Water Company*, 62 Cal. P.U.C. 699, Decision No. 67261; *Re Suburban Water Company*, 63 Cal. P.U.C. 574, Decision No. 68217; and *Re Transfers of stock by Vallecito Water Co. to Calfin Co. and Toll & Co.*, Case No. 8086, 66 Cal. P.U.C. 654, Decision No. 71795. Hickey offered no objection to the commission's request. At oral argument on this appeal Hickey contended that these decisions were not properly before the lower court. We ascertain, however, that throughout the proceedings below *both* parties and the court treated these matters as properly before the court for its consideration. Also in the briefs filed with this court each party refers extensively to the reported

decisions and their contents. We conclude that the superior court was requested to, and did, take judicial notice of them. This was proper under Evidence Code sections 451, 453. This reviewing court is also required to judicially notice the decisions. (Evid. Code, § 459.)

Each of the reported decisions we have mentioned was final at the time of the superior court hearing. Such decisions are conclusive and binding on the parties thereto. (See § 1709; *Los Angeles Ry. Corp.* v. *Los Angeles*, 16 Cal.2d 779, 783-784 [108 P.2d 430]; *Sale* v. *Railroad Com.*, 15 Cal.2d 612, 616 [104 P.2d 38].)

The briefs of each of the parties to this appeal are replete with recitals of factual circumstances which are entirely unsupported by the record. As to such recitals as have been found upon our study of the record to be supported, there has been no substantial compliance with rule 15, Rules on Appeal, requiring that the "statement of any matter in the record shall be supported by appropriate reference to the record." Our exposition and consideration of the factual base of this appeal will, of course, be limited to such matters as were placed before the superior court, and on which its decision was based. We state such facts, as we must, in the light most favorable to the commission, which prevailed below, giving it the benefit of every reasonable inference and resolving conflicts in support of the trial court's order. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; 3 Witkin, Cal. Procedure (1954) p. 2246.)

Vallecito was a public utility water corporation. As indicated, its president was defendant Garnier. Garnier was also president of Suburban Water Systems (Suburban), a public utility geographically adjacent to Vallecito, and of Calfin Company (Calfin), a wholly owned subsidiary and the *alter ego* of Suburban.

One of Calfin's purposes was to do for Suburban things which "Suburban could not do for itself." One of the things Suburban could not do for itself was purchase stock of another public utility without permission of the commission. (See § 852.) Garnier and Suburban's directors wished to obtain control of Vallecito. Suburban accordingly advanced $271,000 (or $279,000) to Calfin for the purpose of buying Vallecito stock. Suburban in turn borrowed the money from a bank; it was found necessary to "pipeline" the funds through Suburban. As purchases of Vallecito stock were made by Calfin, the stock was delivered to Toll and Company

(Toll), the bank's agent (or nominee or "street name") as security for the bank's loans to Suburban.

It is noted that as early as March 14, 1961, counsel for Calfin had advised Garnier that in his opinion the purchase by Calfin of any stock in a public utility without the consent of the commission would be a violation of Public Utilities Code section 852.

By January 1964 Calfin had acquired a total of 18,003 shares of Vallecito stock. The entire amount was held by Toll as security for the bank's loans to Suburban, subject otherwise to the order of Calfin.

Earlier, in May 1963, San Gabriel Valley Water Company (San Gabriel), a public utility, also adjacent geographically to Vallecito's area, applied for authority to purchase up to all the issued and outstanding shares of Vallecito. This application, on October 15, 1963, was granted by the commission. (61 Cal. P.U.C. 509.)

In August 1963 Suburban applied to the commission for authorization to purchase the assets (not stock) of Vallecito. The application, on May 26, 1964, was denied. The commission found that Suburban had failed to show its financial ability to carry out the terms of its proposed agreement, and had failed to show that the granting of the application was in the best interest of Suburban's consumers. (62 Cal. P.U.C. 699, 712.) In the same proceedings the commission considered Calfin's purchases of Vallecito stock. It found (May 26, 1964) that "The purchase of Vallecito stock by Calfin in the manner described herein is tantamount to the purchase of said stock by Suburban and *is in violation of Section 852 of the Public Utilities Code and is therefore void.*" (Italics added.)

Thereafter Suburban sought authority from the commission to purchase the Vallecito stock held by Toll for Calfin. However, before any decision by the commission, and on November 4, 1964, Toll transferred the subject 18,003 shares to plaintiff Hickey.

We now relate the circumstances of the acquisition by Hickey of the Vallecito stock.

Hickey personally advanced no money for the Vallecito shares.

Garnier, apparently anticipating the commission's order made a few days later, "put out the word to get rid of the stock." His assistant, George McMillan, who was also an employee of Calfin, thereupon went to the bank (Toll's principal), and arranged for a loan "to finance the acquistion

*by an individual* of the 18,003 shares of Vallecito stock held by Toll & Co. for Calfin." (Italics added.) The loan was made to Western Pacific Sanitation Company (Western), of which Garnier was president; it was personally guaranteed by Garnier. Counsel for Western was Frederick Schumacher of the law firm of Schumacher and Hale. Schumacher was also Garnier's personal attorney.

On November 3, 1964, Hickey gave to Schumacher and Hale his promissory note for $289,848.30, bearing a 6½ percent interest, together with an agreement pledging, as security for the note's payment, 18,003 shares of Vallecito stock. The amount of the note represented the total purchase price of the Vallecito shares at $16.10 per share, a price previously fixed by Garnier and Suburban as the fair market value of the stock. About the same time McMillan, Garnier's assistant, picked up a cashier's check for $289,848.30 at the office of Schumacher and Hale, which he deposited in Calfin's account. Calfin then paid off Suburban's bank loan which had been incurred in order to "pipeline" funds to Calfin for its purchase of the 18,003 shares.

The next day, November 4, Calfin authorized Toll to release the 18,003 Vallecito shares to McMillan who thereupon directed reissuance of the shares in the name of "William J. Hickey, mailing address c/o Schumacher and Hale, Century City, 1801 Avenue of the Stars, Suite 950, Los Angeles."

Hickey paid no interest on his note to Schumacher and Hale, the payees having granted extensions. Schumacher declined at a later commission hearing to testify concerning the movement of the $289,848.30 and the 18,003 shares of Vallecito stock. At the same hearing, Hickey, asked if it was "from your own personal funds that you purchased this block of shares?" refused to answer, stating "I would like to be excused until I can get counsel and be represented." Thereafter Hickey was represented by Howard M. Downs. Mr. Downs told the commission that "his office had advised Hickey that the investigation was illegal on various grounds and that the subpoena duces tecum served on Hickey was illegal and invalid and that Hickey had decided not to appear before the commission."

On November 10, 1964, six days after delivery to Hickey of the Vallecito stock, the commission decided Suburban's application to itself purchase the stock. It was found that the "Vallecito stock held by Calfin was acquired unlawfully" and that "It would be adverse to the public interest to

authorize Suburban to acquire Vallecito stock from Calfin."
It was ordered that the application be denied and further,
"that neither Suburban Water Systems, Calfin, nor Vallecito
Water Company shall sell or otherwise dispose of, or transfer,
or cause to be transferred, any of the stock held by any of
them or any agent of theirs to any other or others than those
from whom such shares were originally acquired and found
by Decision No. 67261 [62 Cal. P.U.C. 699] to be unlawfully
acquired." (63 Cal. P.U.C. 576.) The commission was obvi-
ously unaware that the 18,003 shares of Vallecito stock had
already been transferred to Hickey.

On December 15, 1964, the commission on its own motion
commenced an investigation, known as case No. 8086, into the
Suburban-Calfin-Toll-Hickey acquisitions of Vallecito stock.
Extended hearings followed. On March 14, 1966, the commis-
sion's examiner stated what his recommendations to the com-
mission would be with respect to the issues in the case. One of
these proposed recommendations was stated as follows: "I am
going to recommend to the commission that Vallecito be
directed to reverse its stock records on the 18,003 shares and
reflect only the owners of the shares prior to their acquisition
by Calfin or Toll and Co. . . ."

Three days later, March 17, 1966, Hickey commenced the
injunction action in which the order setting aside the injunc-
tion here under appeal was later entered. As previously
stated, the defendants were Vallecito, and Garnier and Roby
as its president and secretary respectively. Its pertinent alle-
gations simply stated: "Certain persons, partnerships and
corporations, and each of them, have claimed some right, title,
estate, lien or interest in said personal property adverse to
plaintiff's ownership and have thereby placed a cloud upon
plaintiff's title thereto. Plaintiff has, therefore, instituted an
action to quiet title to said personal property, said action
being enititled WILLIAM J. HICKEY, Plaintiff, vs. VALLE-
CITO WATER COMPANY, et al., being Civil No. 558551 in the
Superior Court of the State of California in and for the City
and County of San Francisco. Said action is presently pend-
ing before said Court. [¶] Defendants have threatened to, and
unless restrained by order of this Court will, wrongfully
transfer upon the books and records of VALLECITO WATER
COMPANY the title to said personal property from plaintiff to
other persons, partnerships and corporations."

Filed with the complaint was a declaration of Hickey's
attorney, Mr. Downs, stating: "Through wrongful reliance on

proceedings and orders of the Public Utilities Commission, San Gabriel Valley Water Company has now created a cloud upon William J. Hickey's title to the above shares in Vallecito Water Company, and has demanded that said shares be transferred on the books of Vallecito Water Company to the original shareholders.'' It should be noted that although they appear to be the adverse parties in interest neither the commission nor San Gabriel were joined as parties. Nor was either given any notice of the filing of the action.

The next day, March 18, 1966, Mr. Downs appeared before the court. He presented a form of ''Decree of Permanent Injunction'' to which was attached a paper signed by Garnier and Roby as president and secretary respectively of Vallecito, which stated, ''The undersigned, hereby consent, to the entry of the attached Permanent Injunction.'' The court, on Mr. Downs' ex parte request, signed and entered the decree. It provided:

''IT IS HEREBY ORDERED that the defendant W. H. ROBY, CAMILLE GARNIER, and VALLECITO WATER COMPANY, their agents, servants, employees and representatives, and all persons acting in concert with them, shall be, and they are hereby restrained and enjoined from transferring, cancelling or reversing upon the books and records of VALLECITO WATER COMPANY without the consent of WILLIAM J. HICKEY, any or all of the shares of the stock of VALLECITO WATER COMPANY issued to and registered in the name of WILLIAM J. HICKEY, represented by Certificate No. 1024 and from taking any other action interfering with the exercise of the ownership rights of WILLIAM J. HICKEY, including the right to vote said stock, or affecting the proportional right, title and interest of WILLIAM J. HICKEY, as the owner of 18,003 shares of a total of 38,332 outstanding shares of stock in such corporation.''

The complaint and declaration, as noted above, refer to the earlier quiet title action and to ''proceedings and order of the Public Utilities Commission.'' They fail to reveal that on May 26, 1964, the commission had ordered that the purchase of the Vallecito stock by Hickey's predecessor was in violation of law and void (62 Cal. P.U.C. 699, 712); that on November 10, 1964, the commission had restrained Suburban, Calfin and Vallecito from transferring such shares (63 Cal. P.U.C. 574, 576); that the commission was *then* (March 18, 1966) in proceeding No. 8086 conducting an inquiry into ''the circumstances surrounding the acquisition of 18,003 shares of Vallecito . . . by William J. Hickey''; and that the commis-

sion's examiner had proposed to recommend an order adverse to Hickey's position. (66 Cal. P.U.C. 654, 655.)[1]

Hickey's attorney in the injunction proceeding was attorney for Vallecito and Garnier in a Los Angeles County Superior Court action numbered 883,196 entitled San Gabriel Water Co. v. Vallecito Water Co. et al., filed April 18, 1966. Vallecito and Garnier appeared in that action May 9, 1966. The commission judicially noticed this action. (66 Cal. P.U.C. 654, 658.)[2]

The adversely interested parties, the commission and San Gabriel, had no knowledge of the existence of the injunction decree until November 4, 1966. On that day, fortuitously, an examination of the superior court register of actions by counsel for San Gabriel revealed the existence of the action and decree.

On December 30, 1966, the commission made its findings in case No. 8086, which is reported in 66 Cal. P.U.C. 654. Among other things the commission found (pp. 663-664):

"3. William J. Hickey holds 18,003 shares of Vallecito's total of 38,332 outstanding shares of common stock representing 47 percent and controls the election of directors, appointment of officers, and management of Vallecito.

"4. Hickey acquired 18,003 shares of Vallecito stock from Toll & Co., nominee of Security First National Bank which equitably held said shares for Calfin Co., alter ego of Suburban Water Systems, a public utility water corporation, which had borrowed approximately $279,000 from Security First National Bank to lend to Calfin to purchase said shares, and transfer them to Toll & Co. as holder and as security for Suburban's loan.

"5. (a) Calfin, Suburban's alter ego, arranged with Security First National Bank for the latter to totally finance Hickey's stock purchase from Toll & Co. by a loan to Western Pacific Sanitation Company and a loan by Schumacher and

[1] It is unnecessary to consider Hickey's uncorroborated claim that certain oral unreported revelations were made to the judge who granted the injunction. He is bound by the allegations of his complaint and the affidavit submitted in support of the order to show cause which led to the issuance of the injunction. They clearly failed to reveal material matters concerning pending proceedings to which they refer.

[2] We note also that Hickey's attorney was counsel for Garnier's company, Suburban, in Los Angeles County Superior Court action numbered 839,957, entitled Constance A. Garnier v. Suburban Water Systems, Inc. (See Suburban Water Systems v. Superior Court, 264 Cal.App.2d 956 [71 Cal.Rptr. 45].) Represented by such counsel, Suburban made its first appearance in that action on June 8, 1966.

Hale to Hickey in the amount of $289,848.30 (18003 shares @ $16.10 per share).

"(b) Hickey is an agent for the management and operation of Vallecito by Suburban.

"(c) Hickey did not acquire said shares in good faith.

"6. The 18,003 shares acquired by Hickey were unlawfully held by Calfin, and the issuance and transfer by Vallecito of its Stock Certificate No. 1024 to Hickey was null and void and of no effect."

The commission thereupon ordered, among other things, that "The transfers of 18,003 shares of its common stock by Vallecito Water Company to Calfin Co. and Toll & Co. were and are null and void and of no effect," and that "The transfer of . . . 18,003 shares of Vallecito's common stock by Vallecito Water Company to William J. Hickey was and is null and void and of no effect." (66 Cal. P.U.C. at p. 664.)

Review of the foregoing decision, sought by Vallecito, has been denied by both the California and United States Supreme Courts.

On February 14, 1967, the commission intervened in Hickey's injunction action. It moved to set aside the consent decree "upon the grounds that said decree was secretly, collusively, and fraudulently obtained, without notice to the Public Utilities Commission of the State of California, and for the purpose of circumventing and frustrating prior Commission decisions and a proceeding then pending before said Commission involving the same subject matter, and that said decree involves an unlawful interference with said Commission in the performance of its official duties, in contravention of Section 1759 of the Public Utilities Code." At the hearing proof was made, or judicial notice taken, of the matters which we have related. The commission's motion was granted. It is from the ensuing order setting aside the injunction decree that the instant appeal was taken.

Fundamental to the issues on this appeal are Public Utilities Code sections 852 and 1759.

Section 852 provides: "No public utility shall purchase or acquire, take or hold, any part of the capital stock of any other public utility, organized or existing under and by virtue of the laws of this State, without having first been authorized to do so by the commission. Every assignment, transfer, contract, or agreement for assignment or transfer of any stock by or through any person or corporation to any corporation or otherwise in violation of any of the provisions of this article

is void and of no effect, and no such transfer shall be made on the books of any public utility.''

The commission is commanded by section 2101 to ''see that the provisions of [section 852] are enforced and obeyed.''

Section 1759 provides: ''No court of this State, except the Supreme Court to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, except that the writ of mandamus shall lie from the Supreme Court to the commission in all proper cases.''

 Hickey's first contention on this appeal is stated as follows: The record does not support the trial court's implied finding that the entry of the injunction decree involved an unlawful interference with the commission in the performance of its official duties in contravention of Public Utilities Code section 1759.

The constitutionality of section 1759 is no longer open to question. (*Pacific Tel. etc. Co.* v. *Eshleman,* 166 Cal. 640 [137 P. 1119, Ann.Cas. 1915C 822, 50 L.R.A. N.S. 652]; *Sexton* v. *Atchison, etc. Ry. Co.,* 173 Cal. 760 [161 P. 748].) By virtue of this section no order of the commission is subject to review by any court of this state except the Supreme Court (*Pacific Tel. & Tel. Co.* v. *Superior Court,* 60 Cal.2d 426, 430 [34 Cal.Rptr. 673, 386 P.2d 233]; *Pellandini* v. *Pacific Limestone Products, Inc.,* 245 Cal.App.2d 774, 777 [54 Cal.Rptr. 290]), nor may any court of this state except the Supreme Court make any order or decision which interferes with the commission in the performance of its official duties (*People* v. *Superior Court,* 62 Cal.2d 515, 516-518 [42 Cal.Rptr. 849, 399 P.2d 385]; *Pacific Tel. & Tel. Co.* v. *Superior Court, supra,* 60 Cal.2d 426, 429-430; *Miller* v. *Railroad Com.,* 9 Cal.2d 190, 195 [70 P.2d 164, 112 A.L.R. 221]; *Truck Owners etc. Inc.* v. *Superior Court,* 194 Cal. 146, 152-153 [228 P. 19]; *Sexton* v. *Atchison etc. Ry. Co., supra,* 173 Cal. 760, 764-765; *People* ex rel. *Public Utilities Com.* v. *Ryerson,* 241 Cal.App.2d 115, 121-122 [50 Cal.Rptr. 246]; *Harmon* v. *Pacific Tel. & Tel. Co.,* 183 Cal.App.2d 1, 3-4 [6 Cal.Rptr. 542]; *Dyke Water Co.* v. *Superior Court,* 159 Cal.App.2d 485, 488-489 [324 P.2d 68].)

 Though an order of the commission be palpably erroneous in point of law, until it is annulled by the Supreme Court, it is binding and conclusive on all courts of this state. (§ 1709; *Loustalot* v. *Superior Court,* 30 Cal.2d 905, 911-912

[186 P.2d 673]; *People* v. *Hadley*, 66 Cal.App. 370, 375-376 [226 P. 836].) Although before the commission has acted a superior court may have jurisdiction to determine rights among parties before it, and to render a judgment binding among the parties, a later decision by the commission, within its jurisdiction, will have the effect of superseding the prior judgment and rendering it of no effect whatsoever insofar as it conflicts with the commission's order. (*Miller* v. *Railroad Com.*, *supra*, 9 Cal.2d 190, 194-199; *Vila* v. *Tahoe Southside Water Utility*, 233 Cal.App.2d 469, 479-480 [43 Cal.Rptr. 654]; 41 Cal.Jur.2d, pp. 271-272.) ▮ "In all collateral actions or proceedings, the orders and decisions of the commission which have become final shall be conclusive." (§ 1709; *People* v. *Western Air Lines, Inc.*, 42 Cal.2d 621, 630 [268 P.2d 723].)

An early, and never challenged, holding on the effect of the predecessor statute to section 1759 (section 67, Public Utilities Act, with substantially the same language) was made in *Sexton* v. *Atchison, etc. Ry Co.*, *supra*, 173 Cal. 760, 764. There the court said:

". . . The plain design of the provision was to prevent any interference with the commission by the courts, except as prescribed in the act itself, in the performance of any duty *defined by the act*. The term 'official duties' as used therein cannot reasonably be given any other meaning, especially when considered in connection with the first portion of the provision, as it must be. Concededly no review of any order or decision of the commission, on the alleged ground that it is violative of any constitutional provision or on any ground is permitted to any court, except as provided in the act itself. The clear intent of the provision as a whole is to place the commission, in so far as the state courts are concerned, in a position where it may not be hampered in the performance of any official act by any court, except to the extent and in the manner specified in the act itself. To the extent deemed necessary to accomplish this, the jurisdiction of state courts is limited by the provision, that of the superior court apparently being entirely taken away, except as to certain actions specially authorized by the act itself to be brought therein at the instance of the commission to enforce penalties or to compel compliance with the provisions of the act. . . ."

▮ When Hickey obtained his injunction decree, March 17, 1966, the commission's order of May 26, 1964 (62 Cal. P.U.C. 699, 712) holding Calfin's acquisition of the subject 18,003 shares to be "in violation of section 852 of the Public

Utilities Code and is therefore void'' was in effect. The purpose of the injunction was to nullify the earlier order which determined that Hickey's transferor had no title to transfer. Thus in the language of section 1759 the injunction purported to ''annul'' the commissioner's order or at least ''to suspend or delay the . . . operation thereof.'' Too, when the injunction decree was entered, the commission was engaged in proceedings concerning the status of the Vallecito stock (see 66 Cal. P.U.C. 654). Just as clearly the injunction was calculated ''to interfere with the commission in the performance of its official duties'' in violation of section 1759.

 It follows that the superior court by virtue of section 1759 had no jurisdiction to enter the subject injunction. (See *Dyke Water Co.* v. *Superior Court, supra,* 159 Cal.App.2d 485, 488-489.) The decree was therefore void and the court properly granted the commission's motion to set it aside of record. (See *People* ex rel. *Public Utilities Com.* v. *Ryerson, supra,* 241 Cal.App.2d 115, 121-122; also *Capital Bond etc. Co.* v. *Hood,* 218 Cal. 729, 731 [24 P.2d 765]; *Burnett* v. *Hoover Ball & Bearing Co.,* 51 Cal.App.2d 613, 614 [125 P.2d 572].)

 Hickey argues that the Supreme Court has twice denied the commission's petition to restrain the San Francisco County Superior Court from proceeding in the quiet title action numbered 558,551 commenced by Hickey against Vallecito concerning the 18,003 Vallecito shares claimed by him. He insists that such denials have the effect of a determination that the superior court has jurisdiction to determine Hickey's rights to the stock. We do not agree. The action taken by the Supreme Court is consistent with the conclusion that the commission, under sections 2101 and 2102, had an adequate remedy, by intervention in the superior court action, to prevent any interference with its duties.[3]

---

[3]Section 2101 states: '' The commission shall see that the provisions of the Constitution and statutes of this State affecting public utilities, the enforcement of which is not specifically vested in some other officer or tribunal, are enforced and obeyed, and that violations thereof are promptly prosecuted and penalties due the State therefor recovered and collected, and to this end it may sue in the name of the people of the State of California. Upon the request of the commission, the Attorney General or the district attorney of the proper county or city and county shall aid in any investigation, hearing, or trial had under the provisions of this part, and shall institute and prosecute actions or proceedings for the enforcement of the provisions of the Constitution and statutes of this State affecting public utilities and for the punishment of all violations thereof.''

Section 2102 states: ''Whenever the commission is of the opinion that

Hickey then insists that by intervening in the San Francisco quiet title action No. 558,551 the commission is estopped to deny the jurisdiction of the superior court to determine title to the contested shares. This contention patently has no merit. The commission's intervention was pursuant to sections 2101-2102 for the purpose of preventing the superior court from exercising jurisdiction or interfering with the commission in the exercise of its official duties. (See *Independent Laundry* v. *Railroad Com.*, 70 Cal.App.2d 816, 823-824 [161 P.2d 827].)

■ Hickey argues that since he was not a party to any of the commission's proceedings, none of its orders may be binding on him.[4] He further complains that if it is held that the orders are binding on him, then section 1759 is necessarily unconstitutional since it deprives him of property without due process of law. These contentions are addressed to the wrong forum.

A contention, similar to that here made by Hickey, was asserted in *Pellandini* v. *Pacific Limestone Products, Inc.*, *supra*, 245 Cal.App.2d 774. Rejecting the argument, the court said (pp. 777-779) : "It is well established that an order of the Public Utilities Commission is not reviewable by any court of this state except the Supreme Court. (Pub. Util. Code, § 1759; *People* v. *Superior Court*, 62 Cal.2d 515 [42 Cal.Rptr. 849, 399 P.2d 385].) The superior court, therefore, may not effectually negate a decision of the commission within the latter's jurisdiction. But respondent contends that because it was not a party to the hearing before the commission, it cannot be bound by the commission's order even if judicial notice

any public utility is failing or omitting or about to fail or omit, to do anything required of it by law, or by any order, decision, rule, direction, or requirement of the commission, or is doing anything or about to do anything, or permitting anything or about to permit anything to be done, in violation of law or of any order, decision, rule, direction, or requirement of the commission, it shall direct the attorney of the commission to commence an action or proceeding in the superior court in and for the county, or city and county, in which the cause or some part thereof arose, or in which the corporation complained of has its principal place of business, or in which the person complained of resides, for the purpose of having such violations or threatened violations stopped and prevented, either by mandamus or injunction. The attorney of the commission shall thereupon begin such action or proceeding in the name of the people of the State of California, by petition to such superior court, alleging the violation or threatened violation complained of, and praying for appropriate relief by way of mandamus or injunction.''

[4]A serious question appears as to whether Hickey was a party to the commission's case No. 8086 (66 Cal. P.U.C. 654). Since a resolution of this point is unnecessary to our decision, we assume, only for the purpose of this appeal, that he was not such a party.

of the order be taken. Respondent says, and it is not denied, that it was not served with notice of the commission's decision and, therefore, was not put on such notice as would require petition for rehearing. To hold respondent bound by the commission's order, argues respondent, would be to deny it due process of law. . . . [¶] We do not agree, however, with respondent's contention that effectuating of the decision of the commission by judgment against respondent for the undercharges would deny due process of law. Respondent's president testified before the commission. No doubt his testimony was substantially the same as that before the superior court. But respondent did not seek to intervene at the commission's hearing in order to defend against the claim of undercharge. It would be difficult to believe, and respondent does not ask us to believe, that it did not have actual notice of the commission's order. But even if it had not known of the order before it was served with summons of the superior court, respondent then could have applied to the commission to rescind, alter or amend its order, under section 1708 of the Public Utilities Code, which provides for such process 'at any time.' The commission points out that in *Pacific Tel. & Tel. Co.* v. *Superior Court,* 60 Cal.2d 426, 430 [34 Cal.Rptr. 673, 386 P.2d 233], a party affected by an order of the commission had the right to seek retroactive rescission of a decision of the commission. This was done by the real party in interest in the *Pacific Telephone* case, even after time for petition for rehearing under section 1733 of the Public Utilities Code had expired. The Supreme Court decided that section 1733 is permissive rather than mandatory, and recognized the right of the party to petition for rescission of the order. [Citation.] . . . [¶] Respondent, having had the opportunity to intervene before the commission, and the further opportunity to apply for rescission of the commission's order, cannot be heard to say that it has been denied due process of law. . . ."

Hickey admittedly had notice of all of the pertinent commission orders and proceedings. He was not deprived of due process of law. He was permitted, as pointed out in *Pellandini* v. *Pacific Limestone Products, Inc., supra,* to seek rehearing under section 1733, or retroactive rescission of the commission's orders under section 1708. If denied relief by the commission, resort to the Supreme Court was available to him. (§ 1759.)

Hickey's contention that he is an innocent purchaser for

value of the subject 18,003 shares is also directed to the wrong forum. The commission (66 Cal. P.U.C. 654, 664) expressly found him to be Suburban's agent, and that he "did not acquire such shares in good faith." We have previously pointed out the remedies available to him.

Hickey's remaining contention is that there is no basis for setting aside the injunction decree on the ground of extrinsic fraud.

Where a judgment has been obtained through extrinsic fraud it may be set aside, though long since final, either by an independent suit in equity or by motion in the principal proceedings. (Code Civ. Proc., § 1916; *Olivera* v. *Grace*, 19 Cal.2d 570, 575-576 [122 P.2d 564, 140 A.L.R. 1328]; 3 Witkin, Cal. Procedure, pp. 2121-2122.) What constitutes extrinsic fraud depends in large part on the circumstance of the individual case. "The outstanding characteristic of extrinsic fraud is that it prevents a fair adversary hearing, the party aggrieved being kept in ignorance of the proceedings." (*State of California* v. *Broderson*, 247 Cal.App.2d 797, 804 [56 Cal.Rptr. 58]; see also *Craney* v. *Low*, 46 Cal.2d 757, 759 [298 P.2d 860]; *Neblett* v. *Pacific Mut. Life Ins. Co.*, 22 Cal.2d 393, 397 [139 P.2d 934]; *Bottom* v. *Bottom*, 210 Cal. App.2d 784, 786-787 [26 Cal.Rptr. 773].) The remedy is available not only to a party who by reason of the extrinsic fraud has been deprived of an opportunity to present his case or obtain a fair adversary proceeding (*Craney* v. *Low, supra*, 46 Cal.2d 757, 759; *Olivera* v. *Grace, supra*, 19 Cal.2d 570, 575-576), but also to a stranger whose interests have been adversely affected by the judgment (*Babbitt* v. *Babbitt*, 44 Cal.2d 289, 293 [282 P.2d 1]; *Bennett* v. *Wilson*, 133 Cal. 379 [65 P. 880, 85 Am.St.Rep. 207]; *People* ex rel. *Public Utilities Com.* v. *Ryerson, supra*, 241 Cal.App.2d 115, 121; *Consolidated Rock Products Co.* v. *Higgins*, 54 Cal.App.2d 779, 780-781 [129 P.2d 929]; *Harada* v. *Fitzpatrick*, 33 Cal.App.2d 453, 459 [91 P.2d 941]; *Associated Oil Co.* v. *Mullin*, 110 Cal.App. 385, 389 [294 P. 421]). The commission, though not a party to the original injunction proceedings, has an interest in maintaining the integrity of its decisions and orders sufficient for it to intervene and prosecute such a motion. (*People* ex rel. *Public Utilities Com.* v. *Ryerson, supra*, 241 Cal.App.2d 115, 119-120.)

The evidence before the superior court disclosed that during the few months following Hickey's injunction proceedings, his attorney was representing Vallecito, Garnier and Suburban in other litigation. He was a director of Vallecito at

the time he obtained the injunction against that company. Hickey and his attorney had full knowledge of the existing orders, and the pending proceedings, of the commission, relating to the validity of Hickey's title to the Vallecito shares. Admittedly the injunction was sought because Hickey was fearful of the proposed orders of the commission in its proceeding No. 8086 (66 Cal. P.U.C. 654). Yet no disclosure of the existence of, or the nature of, the pending proceeding before the commission, or of the content of the earlier orders of the commission was made to the court in the moving papers filed by Hickey. (See fn. 1, *ante.*) Hickey and his attorney knew that the commission was the real party in interest in the subject matter of the injunction; nevertheless it was not made a party to the action or otherwise given notice of its pendency.

From the foregoing the superior court could reasonably have concluded that Hickey's intent was to prevent a fair adversary hearing, and to keep the principal party in interest, the commission, in ignorance of the injunction proceedings.

The order setting aside the injunction is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 6, 1969.