[Civ. No. 38874. First Dist., Div. One. Jan. 25, 1977.]

PAULINE R. VILLARRUEL, Plaintiff and Appellant, v.
ELIAS ARREOLA et al., Defendants and Respondents;
WESTERN PIONEER INSURANCE COMPANY,
Intervener and Respondent.

## COUNSEL

Jesse W. Jack for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

Popelka, Allard, McCowan & Jones and Bernard J. Allard for Intervener and Respondent.

## OPINION

**ELKINGTON, J.**—On the motion of Western Pioneer Insurance Company ("Western Pioneer"), the superior court ordered a previously entered "consent" judgment for a total of $425,000, in favor of plaintiffs Pauline R. Villarruel, Richard Villarruel, Ophelia Villarruel and Annamaria Villarruel, and against defendants Ofelia Arreola de Avelos who was sued as Deavalos Arreola, Manuela Arreola, and Elias Arreola R. who was sued as Elias Rodriguez Arreola (hereinafter "Elias"), vacated and set aside. The latter three named plaintiffs were minors, suing through Pauline R. Villarruel, their guardian ad litem. Pauline R. Villarruel alone, apparently in her individual capacity, has appealed from the order, and from an order permitting Western Pioneer to intervene in the action.

In reviewing the propriety of an order granting such a motion to set aside a judgment, we must assume in support of the order that the superior court resolved all evidentiary conflicts in favor of the moving party. (*Nestle* v. *City of Santa Monica,* 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; *Turley* v. *Turley,* 254 Cal.App.2d 169, 172 [61 Cal.Rptr. 673]; *Warren* v. *Warren,* 120 Cal.App.2d 396, 400 [261 P.2d 309].)

Viewing the relevant evidence before the superior court on the motion in this light, we find the following.

Defendant Elias in the early morning hours was driving an automobile with his friend Sixto Villarruel, aged 42, as a passenger. He collided with a legally parked vehicle, proximately causing injuries to the passenger which resulted in his death. The automobile was being used by Elias with the express permission of its owners, his sisters, defendants Manuela Arreola and Ofelia Arreola de Avelos.

Allstate Insurance Company ("Allstate") was the insurer of the automobile driven by Elias at the time of the accident; its liability was limited to $15,000. Western Pioneer was the insurer of another automobile which was owned by Elias; its policy also had a liability limitation of $15,000.

The several plaintiffs are the surviving spouse and children of the deceased Sixto Villarruel. They employed an attorney, Mr. Jesse W. Jack, to represent them in a wrongful death action. The action was commenced May 23, 1974, against the offending automobile's driver, Elias, and its owners, Manuela Arreola and Ofelia Arreola de Avelos. The total amount of damages sought was $252,310.63.

Allstate, represented by Mr. James Perry, appeared in the action on behalf of all defendants. It promptly agreed to settle with the plaintiffs for the full amount of its policy's coverage, $15,000. Mr. Jack, for the plaintiffs, then made demand on Western Pioneer for settlement in the amount of its policy's limitation of $15,000. That company recognized that it had insured Elias' automobile, and that ordinarily it would be liable for injuries negligently and proximately caused by him while driving an automobile. But it contended that since the automobile in question was owned by Ofelia Arreola de Avelos, "a relative or a member of his household," the Western Pioneer policy by its express terms did not cover the subject accident. It also contended "that the vehicle driven by its insured at the time of the accident would not qualify as a temporary substitute automobile under the terms of the policy."

On May 2, 1975, Western Pioneer's attorney, Mr. James C. Jones, Jr., mailed to the stated addressees, the following letter:

"James Perry [attorney for Allstate]
Attorney at Law
440 North First Street
San Jose, California

"Jesse W. Jack [attorney for plaintiffs]
Attorney at Law
99 Church Lane
Los Gatos, California

"Re: Elias R. Arreola v. Western Pioneer
Ins. Co. Our File: 11182

"Gentlemen:

"This office has been retained by the Western Pioneer Insurance Company to represent it in connection with the matter referenced above.

"As I understand the situation, Western Pioneer issued an automobile liability insurance policy with limits of $15,000 to Elias R. Arreola and this policy was in effect on the date of the loss. Western Pioneer feels, however, that it has a valid coverage defense to the extent that the vehicle driven by its insured at the time of the accident would not qualify as a temporary substitute automobile under the terms of the policy. Western Pioneer desires to obtain a judicial determination of this issue. In order to obtain that decision as expediently as possible and with a minimum of inconvenience to all parties concerned I have been instructed to do the following.

"The full $15,000 limit of the Western Pioneer Insurance policy is hereby tendered to plaintiff Pauline Villarruel and her attorney. Western Pioneer will pay this sum to the Court in which this action is pending or to any other appropriate escrow holder designated by the plaintiff. Suit will then immediately be filed by Western Pioneer Insurance Company asking the Court to declare whether coverage exists under the facts presented by this case. Hopefully, Attorney Jack will be willing to accept service of the complaint and will file an immediate answer so that I can ask the Court to set a preferential trail [sic] date. If the Declaratory Relief Action is handled in that fashion we should be able to obtain a trial date within approximately forty-five to sixty days. In the meantime, the underlying Wrongful Death Action, which I understand is set for trial on May 12, 1975, should be taken off calendar pending a resolution of the coverage dispute. This would allow Allstate to make immediate payment of its policy limits and close its file since if Western Pioneer

does not prevail on the coverage question the full amount of its policy limits will also be paid over to the plaintiff and the Wrongful Death Action will not go to trial.

"I have already discussed this proposal with Attorney Jack who has indicated his agreement. I have been unable to contact Attorney Perry who has apparently been involved in a trial. I would ask that Mr. Perry give me a call upon receipt of this letter so that we can discuss the matter further. I would also ask that Mr. Jack indicate his agreement that the funds be paid into the Superior Court Clerk's office or else designate some other suitable escrow holder."

The following declaration of Western Pioneer's attorney, Mr. Jones, was also before the superior court at the hearing of Western Pioneer's motion:

"That on May 2, 1975, I had a telephone conversation with Attorney Jesse Jack who represented the plaintiffs herein. In the course of my conversation with Attorney Jack, I indicated that Western Pioneer desired to tender to his clients $15,000.00 which represented the full amount of the defendants' coverage under the Western Pioneer policy. I proposed to deposit that money with the Superior Court or with any other suitable escrow holder whom Mr. Jack might designate. I then proposed to file a declaratory relief action in order to obtain a judicial determination of the coverage question which was being asserted by Western Pioneer. I further proposed that the underlying suit for wrongful death which at that time was scheduled for trial on May 12, 1975, be taken off calendar. It was then agreed that the $15,000.00 which would be held by the Superior Court would be paid over to the party which prevailed in the declaratory relief action and *that would end the matter.* I believed it was understood clearly by Mr. Jack and myself that there would be no attempts to obtain any excess judgment or to assert any claim of bad faith against Western Pioneer Insurance Company. That belief is supported by the fact that in the course of my conversation with Mr. Jack, he expressed concern over getting some money for his clients and indicated that he would be agreeable to the proposal set forth above only if the Allstate Insurance Company could be persuaded to pay over its $15,000.00 in primary coverage. We discussed that point further and both concluded that based on the agreement outlined above, Allstate would have no reason *not* to pay over its policy to the plaintiffs. The reason we came to that conclusion is that our agreement contemplated that the suit for wrongful death would become moot and would not have

to go to trial or be defended by Allstate or by anyone else since the declaratory relief action would decide all of the rights of the various parties and would be a final end to the matter. In other words, both Mr. Jack and I agreed that upon the immediate payment of its $15,000.00 in coverage, Allstate could close its files since it would have no further obligation to indemnify its insured and would have no further need to defend its insured in the wrongful death action because the wrongful death action would not be tried. This discussion is clearly confirmed in my letter of May 2, 1975, to Attorney Jack which is attached as an Exhibit to this Motion. The portion of that letter referred to here states as follows:

> 'This would allow Allstate to make immediate payment of its policy limits and close its file since if Western Pioneer does not prevail on the coverage question, the full amount of its policy limits will also be paid over to the plaintiff and the wrongful death action will not go to trial.'

"At the conclusion of my telephone conversation with Attorney Jack, he agreed to the proposal set forth above and the one confirmed in my letter dated May 2, 1975.

"After discussing the matter with Attorney Jack, I made numerous attempts to reach Attorney James Perry by telephone, but was informed that he was in trial and unavailable. Since I had scheduled the depositions during the following week of May 5, 1975, first in Los Angeles and later in Portland, Oregon, I discussed the matter with my associate, Mr. Allard, and requested that he make an effort to contact Attorney Perry and set out with him the terms of my agreement with Mr. Jack. At that point, it was my belief that the wrongful death would be taken off calendar and that following the declaratory relief action Western Pioneer would either get back its $15,000.00 in coverage or pay that sum over to the plaintiffs, but no more than that amount.

"On June 2, 1975, I appeared at 9:00 a.m. on the trial calendar as the attorney representing the plaintiff in the case of California Casualty v. Reinecke which was scheduled for trial that morning. While present in the department of the presiding judge, I heard the court call the case of Villarruel v. Arreola on the trial calendar. I had received no notice, either formal or informal, that the wrongful death case was going to trial and became aware of the fact that morning only by coincidence. Since I was assigned to a department for trial, I immediately called Mr. Allard

of my office and asked him to come to court and appear at the so-called trial of the case."

Upon Mr. Allard's arrival in court toward the end of the "trial" the following ensued:

"Mr. Allard: May I be heard, your Honor? The Court: Yes. Mr. Allard: Evidently there was a dispute as to possible coverage under another policy and I asked Counsel to call me before this particular matter was heard although I am not a party to it. The Court: They did indicate there was a third or a second policy. Mr. Allard: Did Counsel stipulate to a judgment? The Court: Yes. They have taken a judgment against the company for the face value of the insurance policy of Allstate. Mr. Allard: With a covenant not to execute? The Court: Yes. Mr. Allard: I presume I have no standing at all to intercede here. The Court: That would be my view. There was no disclosure to the Court of any interest on your part. However, there was a disclosure that there was another insurance policy outstanding and that the particular order is limited to the policy involving Allstate and there was a consideration of the full amount that would be a covenant not to sue. Mr. Jack: That is correct. The Court: I don't feel there is anything that you can do if they agree to this particular arrangement since it is a consent judgment."

Mr. Allard took no further part in the proceedings.

A consent judgment, as previously indicated, was thereupon entered in favor of the several plaintiffs for amounts totaling $425,000.

Thereafter the plaintiffs entered into a "Covenant Not to Execute" against the defendants which, among other things contained the following recital:

"WHEREAS, defendants Ofelia Arreola de Avalos, sued herein as de Avalos Arreola, Manuela Arreola and Elias Arreola R. sued herein as Elias Rodriguez Arreola, through Allstate Insurance Company, their insuror, have offered to pay plaintiffs the sum of $15,000.00, and assign any and all rights of action against Western Pioneer Insurance Company in exchange for a Covenant Not to Execute on the personal assets on defendants Ofelia Arreola de Avalos, sued herein as de Avalos Arreola, Manuela Arreola, Elias Arreola R., sued herein as Elias Rodriguez Arreola, and Allstate Insurance Company; . . ."

In consideration of the "Covenant Not to Execute," the defendants then "sold, assigned and set over to plaintiffs all of their rights, titles and interests in and to their cause of action" against Western Pioneer "for bad faith in refusing to settle for policy limits." This was followed by plaintiffs' separate action by which, under the well-known rule of *Crisci* v. *Security Ins. Co.,* 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], they sought $425,000 against Western Pioneer "for bad faith in refusing to settle for policy limits." That action is presently pending.

■ From the foregoing evidence the trial court reasonably could find, and presumably did find (see *Nestle* v. *City of Santa Monica, supra,* 6 Cal.3d 920; *Turley* v. *Turley, supra,* 254 Cal.App.2d 169; *Warren* v. *Warren, supra,* 120 Cal.App.2d 396), that the $425,000 "consent" judgment, in an amount almost double that prayed for, had been entered without notice to Western Pioneer or its attorney, and contrary to an agreement with plaintiffs' attorney, Mr. Jack. The obvious purpose could reasonably be considered an unconscionable abuse of, or attempt to abuse, the rule of *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425. Under the circumstances it will also be presumed that the trial court found the judgment to have been entered as a result of mistake, or collusion, or fraud. And it is patent that the interests of Western Pioneer, although a stranger to the action, were substantially and intentionally affected by the judgment.

It is settled law that in such a context an adversely affected party, although a stranger to the action, will have standing according to principles of equity to proceed to have the judgment so obtained set aside.

The pertinent rule was announced in *Consolidated Rock Prod. Co.* v. *Higgins,* 54 Cal.App.2d 779, 781 [129 P.2d 929], as follows:

" 'A stranger to the record, who was not a party to the action in which the judgment was rendered . . . is not prohibited from impeaching the validity of the judgment in a collateral proceeding; but in order to do so he must show that he has rights, claims, or interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition, . . . Thus situated he may attack the judgment . . . for fraud or collusion; . . .' "

The rule has been variously stated: "It is the general rule that a judgment obtained in fraud of the interests of a third person is not

binding upon him" (*Babbitt* v. *Babbitt,* 44 Cal.2d 289, 293 [282 P.2d 1]); ". . . judgments 'procured through fraud of either of the parties, or by the collusion of both *for the purpose of defrauding some third person*' " may be " 'wholly or partly avoided' by strangers to the record" (*Bennett* v. *Wilson,* 133 Cal. 379, 382 [65 P. 880]); "The remedy is available not only to a party who by reason of the extrinsic fraud has been deprived of an opportunity to present his case or obtain a fair adversary proceeding . . . but also to a stranger whose interests have been adversely affected by the judgment" (*Hickey* v. *Roby,* 273 Cal.App.2d 752, 768 [77 Cal.Rptr. 486]); "A person, not a party to the action in which the extrinsic fraud is perpetrated, who is adversely affected by the judgment, may bring an action in equity to vacate it" (*Harada* v. *Fitzpatrick,* 33 Cal.App.2d 453, 459 [91 P.2d 941]). (See also *Bernhard* v. *Waring,* 213 Cal. 175, 181 [2 P.2d 32]; *Anderson* v. *Bank of Lassen Co.,* 140 Cal. 695, 698-699 [74 P. 287]; *Associated Oil Co.* v. *Mullin,* 110 Cal.App. 385, 389 [294 P. 421]; *Bowman* v. *Bowman,* 97 Cal.App. 613, 624 [275 P. 1023].)

■ The right of a third party to set aside such a judgment does not necessarily depend upon extrinsic fraud; it will also rest upon extrinsic mistake, which may have existed in the case at hand, and upon which the trial court's order setting aside the judgment may have rested. "A party or one in privity with him who has been prevented from obtaining a fair adversary hearing through extrinsic fraud or mistake may bring an equitable action to vacate the judgment. . . . A stranger may maintain such an action if his interests have been adversely affected by the judgment." (*People* ex rel. *Public Util. Com.* v. *Ryerson,* 241 Cal.App.2d 115, 119 [50 Cal.Rptr. 246].)

The proceeding may be taken by a motion in the action in which the judgment was entered, or by an independent action in equity. (*Olivera* v. *Grace,* 19 Cal.2d 570, 575-576 [122 P.2d 564]; *Hickey* v. *Roby, supra,* 273 Cal.App.2d 752, 768; *Harada* v. *Fitzpatrick, supra,* 33 Cal.App.2d 453, 459, and see authority there collected.) Here Western Pioneer properly chose to proceed by way of a motion in plaintiffs' action.

We have considered the cases principally relied upon by the appealing plaintiff Pauline R. Villarruel, i.e., *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau,* 15 Cal.3d 9 [123 Cal.Rptr. 288, 538 P.2d 744], *Drinnon* v. *Oliver,* 24 Cal.App.3d 571 [101 Cal.Rptr. 120], and *Zander* v. *Texaco, Inc.,* 259 Cal.App.2d 793 [66 Cal.Rptr. 561]. None concerns a consent judgment obtained by parties to an action under the circum-

stances of this case, to the prejudice of a nonparty insurance carrier. We find them to be inapposite to the issues before us.

For the reasons pointed out, the appealing plaintiff's additional contention "that intervention is not permitted after trial has been concluded and final judgment rendered, absent a showing that the judgment is void or the result of fraud," is also found to be without merit.

The superior court's order setting aside the judgment must accordingly be affirmed.

The order setting aside the judgment is affirmed. The appeal from a nonappealable order permitting intervention is dismissed. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 200, p. 1873.)

Molinari, P. J., and Sims, J., concurred.